No. 42,658

STATE OF KANSAS, *Appellee*, v. RANDALL LEWELLEN GRAY, *Appellant*.

(369 P. 2d 330)

Opinion filed March 3, 1962.

Appellant was on the briefs *pro se*.

*Matthew G. Podrebarac*, assistant county attorney, argued the cause, and *William Ferguson*, attorney general, *Robert Hoffman*, assistant attorney general, and *Robert J. Foster*, county attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

ROBB, J.: This is an appeal from the conviction of defendant of the crime of first degree murder with a recommendation of life imprisonment under the verdict of the jury and a sentence of life imprisonment by the trial court based upon that verdict.

Since there is no question concerning the pleadings, the preliminary hearing, or the appointment of counsel for defendant by the trial court, we shall omit those details but will give a brief statement of the facts.

At 4:30 a. m. on November 13, 1960, defendant entered his mother's home at 1238 Walker avenue, Kansas City, Kansas, where

defendant, his wife Shirley, and their two children were living. Defendant took a .22 caliber pistol from his belt and shot his wife six times, once in the neck and the other five in the area of the head, from which wounds Shirley died. Defendant was apprehended in Kansas City, Missouri, he waived extradition, and was returned to Kansas for trial.

On March 14, 1961, a jury was selected and sworn and it was determined some alternate jurors would be selected. At that time one of the original twelve jurors advised the court of certain facts he felt would make it impossible for him to render defendant a fair and impartial verdict. In its formal journal entry of judgment the trial court quoted from the docket sheet of March 14, 1961, in part as follows:

"'Upon inquiry the court found that it would be impossible for the defendant to receive a fair trial from the sworn jury and at the request of deft. the court declared a mis-trial and re-set the case for trial for May 8, 1961 . . .;'"

and the journal entry of judgment then continued:

"That the defendant, through his counsel, C. Howard Washburn, does not agree that he or the defendant requested that the court declare a mis-trial."

The trial court declared a mistrial, discharged the entire panel of jurors, and set the case for a later date. The parties and their counsel appeared on May 15, 1961, another jury was selected and trial was had. That jury found defendant guilty of murder in the first degree and recommended punishment by confinement and hard labor in the state penitentiary for life. Sentence was accordingly imposed by the trial court. Hence, this appeal.

The first and most important question raised is whether defendant was placed in double jeopardy by the trial commencing on May 15, 1961, after the previous declaring of a mistrial and discharge of the jury on March 14, 1961.

Defendant contends, and the record supports the contention, that he did not request a mistrial. That when the trial court retired to the court's chambers with counsel and the defendant, along with the juror who had made the statement he could not render a fair and impartial verdict, the court stated it did not think either defendant or the state of Kansas would get a fair trial for that reason, as shown in the journal entry of judgment. The jury was discharged and defendant was later tried by another jury panel.

This is not the first time such an incident has taken place. The

authorities are numerous and are in general accord with the attitude of appellate courts expressed in the following cases where such questions arose in a trial court.

In *State v. Hansford*, 76 Kan. 678, 92 Pac. 551, the case had been partially tried by the trial court when it was discovered that something said in the trial, or that had happened during the trial, caused a juror to become prejudiced. Even though part of the evidence had been submitted the trial was stopped, a mistrial declared, and the jury discharged. This court held the defendant would not be deemed to have been twice put in jeopardy for the same offense. (Syl. ¶ 1.) This rule was somewhat expanded in the opinion in the Hansford case by a quotation from the syllabus in *Thompson v. United States*, 155 U. S. 271, 15 S. Ct. 73, 39 L. Ed. 146, as follows:

"'. . . courts of justice are invested with authority to discharge a jury from giving any verdict whenever in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated, and to order a trial by another jury; and a defendant is not thereby twice put in jeopardy.'" (p. 684.)

Our attention is next directed to *Brock v. North Carolina*, 344 U. S. 424, 73 S. Ct. 349, 97 L. Ed. 456, where two defendants, Jim Cook and Elmer Matthews, were tried and found guilty of assault with a deadly weapon. Before final judgments were pronounced on their convictions, petitioner Brock was also placed on trial in a criminal prosecution. Cook and Matthews were called by the state as witnesses to corroborate testimony of other witnesses but they refused to answer questions because the answers might tend to incriminate them. The state moved to have a juror withdrawn and a mistrial ordered. The petitioner objected. The North Carolina Supreme Court later affirmed the convictions of Cook and Matthews. A second jury was impaneled to try Brock. His objections to trial were overruled, Cook testified as a witness for the state, and Brock was found guilty and sentenced. He appealed to the North Carolina Supreme Court, which affirmed his conviction and sentence. Certiorari was then granted by the Supreme Court of the United States and in the opinion affirming the court below the following language was used:

"This Court has long favored the rule of discretion in the trial judge to declare a mistrial and to require another panel to try the defendant if the ends of justice will be best served. *Wade v. Hunter*, 336 U. S. 684; *Thompson v. United States*, 155 U. S. 271, 273-274. As was said in *Wade v. Hunter*, supra, p. 690, 'a trial can be discontinued when particular circumstances manifest a necessity for so doing, and when failure to discontinue would defeat the ends

of justice.' Justice to either or both parties may indicate to the wise discretion of the trial judge that he declare a mistrial and require the defendant to stand trial before another jury. As in all cases involving what is or is not due process, so in this case, no hard and fast rule can be laid down. The pattern of due process is picked out in the facts and circumstances of each case." (pp. 427, 428.)

The general rule, especially in our American courts, is that the decision as to whether there is a real, absolute, and unequivocal necessity for discharge of a jury in order that the ends of justice will not be defeated is left to the sound discretion of the trial court. In other words, the general modern rule is that a court may discharge a jury without working an acquittal of the defendant in any case where the ends of justice, under the circumstances, would otherwise be defeated. In so doing the trial court should exercise sound discretion and the greatest caution, and this is especially true in capital cases. (15 Am. Jur., Criminal Law, § 406, pp. 75-76; 22 C. J. S., Criminal Law, §§ 258, 259, pp. 669-679.) In the last cited work it is stated:

"*Disqualification of juror.* Where the jury are discharged after the trial has begun, by reason of the fact that a juror has become disqualified . . . there is neither an acquittal nor former jeopardy. . . ." (pp. 677, 678.)

The above circumstance was the one upon which the trial court in our present case exercised its judicial discretion when it found a sufficient degree of necessity to require that a mistrial be declared and the jury discharged because neither the defendant nor the state would be able to receive a fair trial from that particular jury panel. Under such circumstances ordinary and established legal procedures were guaranteed not only to the defendant but also to the state in order that the ends of justice would not be defeated. Thus the trial court did not err in overruling defendant's motion for discharge in the form of a plea in bar.

Defendant's next contention is he was not allowed to show aggravating circumstances which surrounded his married life with the deceased, but the record reflects the opposite. Even in the statement introduced at the trial which defendant had given to officers at 7:05 a. m. on November 13, 1960, he made statements in regard to deceased's threats to kill him, the use of knives and scissors, and how she had "loused [him] up" with his employers. In addition the trial court placed practically no limits on the testimony of defendant's witness, Morton Jacobs, M. D., specializing in psychiatry, who was allowed to testify in behalf of defendant, in

any of the categories he chose, as to the defendant, the deceased, and their turbulent marital life. Therefore, the trial court cannot be said to have committed error in its rulings on the admission of evidence, and the same is true of the next two questions raised by defendant.

In both civil and criminal appeals under the rules of this court as revised on May 1, 1959, and G. S. 1949, 60-3312, it is the duty of the appellant (here defendant) to file an abstract containing a synopsis of so much of the pleadings, records, events, and proceedings in the case as appellant deems necessary for the consideration of the court. From the record before us defendant's next point is that the court erred in admitting testimony of oral statements he made to arresting officers and the officers who brought him to Kansas from Missouri but these statements were properly admitted because they were made during ordinary conversation, they were voluntary, and were not in response to any questions put to him by such officers. These matters were considered and settled in *State v. Germany,* 173 Kan. 214, 224, 245 P. 2d 981, an appeal from a conviction of murder in the first degree and a death sentence in which a written statement and various oral statements of defendant against his interests were held to have been properly admitted. Also in *State v. Stewart,* 179 Kan. 445, 454, 296 P. 2d 1071, where defendant was charged with murder in the first degree and convicted of murder in the second degree, and objection was made to admission of remarks defendant had made to officers and bystanders, such statements were held to be only admissions against interest. Finally, in *State v. Stubbs,* 186 Kan. 266, 272, 349 P. 2d 936, defendant was likewise charged with first degree murder and convicted of second degree murder, and it was said the trial court had been particularly careful to determine that oral statements and a subsequent written statement of defendant had been voluntarily given.

Defendant's next contention that counsel was not appointed by the trial court to represent him on this appeal is unfounded. (G. S. 1949, 62-1304.)

The trial court gave a total of forty instructions to the jury and from a careful consideration of all of them, we conclude they were fair to the defendant and further, we find no merit in defendant's contention the trial court erred in failing to instruct on first, second, and fourth degree manslaughter under *State v. Palmer,* 173 Kan. 560, 251 P. 2d 225. A reading of the facts of that case shows it

presented an entirely different situation from this one. When this defendant stood over his wife at such close range with a loaded pistol and proceeded to shoot her six times, once in the neck and five in the area of the head, he cannot be heard to claim that the killing was without a design to effect death, or that any other element of manslaughter in any degree was present. (G. S. 1949, 21-407 to 21-419, incl.)

In a final answer to this objection to the trial court's instructions, we may say we think the trial court in its instructions went further in this case in favor of defendant than is generally the situation in such criminal prosecutions.

Defendant's next contention of misconduct of the jury because one of the jurors fell asleep is answered in *State v. Jones*, 187 Kan. 496, 499, 357 P. 2d 760. There a juror was heard to snore twice and a short recess was declared to allow him to get awake but defendant there, as here, did not show how his substantial rights were thereby prejudiced.

Defendant's remaining claims of error either are not supported by the record or do not affect his substantial rights. He has not by any of his claims of error sustained the burden imposed upon him to show that the trial court committed error which prejudicially affected his substantial rights. We think the trial court was exceedingly careful and patient in seeing that defendant had a full, fair and complete trial and there is nothing reflected in the record before us upon which a reversal can be based.

Judgment affirmed.