Nos. 46,001 and 46,002—(Consolidated)

STATE OF KANSAS, *Appellee,* v. JOHN B. FINLEY, *Appellant.*

(490 P. 2d 630)

Opinion filed November 6, 1971.

*Jim Lawing*, of Jim Lawing, Chartered, of Wichita, argued the cause and was on the brief for the appellant.

*J. Stewart McWilliams*, Deputy County Attorney, argued the cause, and *Vern Miller*, Attorney General, and *Keith Sanborn*, County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: Defendant, John B. Finley, appeals from convictions in a consolidated trial of two separate informations. In the first information defendant was charged with burglary and larceny in connection therewith pertaining to the dwelling house of Elmer Childress in Wichita. In the second information defendant was charged with burglary and larceny in connection therewith pertaining to the dwelling house of Bill G. Rigsby, and in a second count with the possession of burglary tools in violation of K. S. A. 21-2437 (repealed L. 1969, Ch. 180, Sec. 21-4701 [now, K. S. A. 1970 Supp. 21-3717]).

Defendant was convicted of all five offenses. After previous notification to defendant, the State produced evidence of two prior felony convictions and defendant was sentenced to concurrent life sentences on each of the five charges pursuant to the provisions of K. S. A. 21-107a (now K. S. A. 1970 Supp. 21-4504).

On appeal defendant assigns nine points of error. Even though we find the conviction for burglary must be set aside and a new trial had for reasons hereafter stated, we deem it necessary to consider several points relating to other matters raised.

Defendant's first point is directed at the trial court's denial of his plea of former jeopardy based on the fact that a previous trial

on these charges was aborted by the trial court's declaration of a mistrial.

Defendant's first trial commenced on October 20, 1969, and proceeded to the submission of the case to the jury on October 23, 1969. The jury was unable to arrive at a verdict and was permitted to separate during a recess for the night.

Following the adjournment of court on October 23, Mr. Zavala, a member of the jury, was contacted by one Pat Cordova, who was later identified as a girl friend of defendant. According to Zavala's testimony, taken the following morning, Mrs. Cordova followed him from the courthouse, where she had been attending the trial as a spectator, and approached Zavala when he and his wife stopped at a place known as Atlantic Mills to pick up some merchandise while he was on his way home from court. At that time Mrs. Cordova told Zavala that the defendant was not guilty, but that she could not talk further with Zavala for fear that she would get in trouble. Arrangements were made for Mrs. Cordova to call Zavala at his home at 7 o'clock that evening. Zavala arranged a meeting with Mrs. Cordova then informed the police who arrested Mrs. Cordova shortly after the meeting. Apparently, Zavala also informed the trial judge of the incident by telephone later in the evening.

When court convened the following morning Zavala was directed to come forward and be sworn as a witness in the presence of the other members of the jury. The court then announced that it had been informed by a telephone call from the juror who was now taking the witness stand. Zavala was then interrogated concerning his meetings and conversations with Mrs. Cordova by the court and counsel for both the State and defendant. Zavala testified that he had been influenced and that if he sat on the jury he would not be giving the defendant a fair chance.

At the conclusion of Zavala's testimony, the trial court addressed the jury in pertinent part as follows:

" 'The jury, I think, now realizes it is necessary to declare a mistrial in the case. I suppose that needs no further explanation, and since this was brought about by no fault of the prosecution, the Court declares this defendant has not been placed in jeopardy and he may be retried on these charges, or on amended charges. . . .' "

During the course of its comments the trial court advised defendant's counsel as follows:

"THE COURT: Do you have anything to say Mr. Lawing?

"MR. LAWING: No, your honor. I am sure the Court knows what to do in this case."

The court then declared a mistrial and discharged the jury.

An amended information was filed and the case was recalendared for trial. In the meantime, defendant filed a motion for discharge on the ground that he had been in jeopardy for the same offenses at the previous trial. Defendant's motion was overruled; the trial ensued resulting in the convictions from which this appeal is taken.

Based on the circumstances surrounding the declaration of the mistrial, defendant on appeal contends that his constitutional right of protection from being twice put in jeopardy for the same offenses has been violated.

Defendant argues that since no misconduct on his part brought about the situation any declaration of a mistrial without his consent constitutes jeopardy and bars reprosecution.

In response to defendant's contention the State asserts (1) that the circumstances clearly established the necessity of a mistrial and (2) that the response of defendant's counsel to the court's query was tantamount to consent by the defendant.

Circumstances warranting the discharge of a jury prior to verdict are set out in K. S. A. 60-248 (f):

"The jury may be discharged by the court on account of the sickness of a juror, or other accident or calamity, *or other necessity* to be found by the court requiring their discharge, or by consent of both parties, or after they have been kept together until it satisfactorily appears that there is no probability of their agreeing." (Emphasis supplied.)

It should be noted that at the time of the instant trial, the foregoing statute was made applicable to the trial of criminal cases by K. S. A. 62-1412 (repealed, L. 1970, Ch. 129, Sec. 22-4604; *State v. Blockyou*, 195 Kan. 405, 407 P. 2d 519). Ordering of mistrials in criminal cases is now governed by K. S. A. 1970 Supp. 22-3423.

Although Mrs. Cordova was identified as a girl friend of defendant, the record does not establish that she contacted Zavala at the instigation of defendant. Nevertheless, we believe that jury tampering by a third person, when established by judicial determination, is of such gravity as to necessitate a mistrial. Particularly where, as in this case, a juror confesses that he has been influenced so he could not give a fair trial.

In *State v. Hansford*, 76 Kan. 678, 92 Pac. 551, the charge was

statutory rape. On the second day of the trial one of the jurors disclosed that he entertained a prejudice growing out of an incident that occurred in his father's family, which was revived in his mind by the testimony given in the case. After hearing the statement of the juror, the trial court, over defendant's objection, declared a mistrial. When the case was again brought on for trial the defendant filed a plea of former jeopardy, the denial of which was the basis for defendant's appeal.

In considering disqualification of a juror as grounds for a mistrial with respect to jeopardy, Chief Justice Johnston spoke for the court in this language:

". . . When a juror, as in this case, confesses to an incurable prejudice which disqualified him from exercising the functions of a juror or acting impartially as between the parties a continuance of the trial would be a farce, as the object of a trial—a fair and impartial verdict—becomes an impossibility. After learning of this situation by a judicial inquiry nothing was left for the court except to discharge that jury and impanel another." (pp. 682-683.)

At the time of the *Hansford* appeal (1907), the applicable statute governing discharge of a jury was G. S. 1901, ch. 80, art. 15, § 4728. It was the forerunner of 60-248 (*f*), supra, and identical except the phrase "or other necessity to be found by the court requiring their discharge," was not included. Nevertheless, the court determined that the word "accident" as used in the section covered the occurrence in question, stating in the opinion:

". . . It was a contingency which could not have been foreseen or well avoided by any one connected with the trial, unless it was the juror himself, and his examination does not betray any dishonesty of purpose. It therefore appears to have been an accidental occurrence—one which showed a manifest necessity for the discharge of that jury and the impaneling of one which could render a just and impartial verdict." (p. 686.)

No Kansas case dealing specifically with jury tampering is called to our attention. However, in view of the nature of the occurrence in *Hansford*, we believe what was said and held therein is fully applicable to the instant case.

The rule announced in the *Hansford* decision remains the law in this jurisdiction. In *State v. Gray*, 189 Kan. 398, 369 P. 2d 330, a mistrial was declared following a juror's announcement of disqualification in much the same manner as in *Hansford*. In dealing with the question of double jeopardy in the appeal from a conviction after a reprosecution we held:

"The general rule is that when particular circumstances manifest a necessity for so doing, the trial court may, in its sound discretion, declare a mistrial, discharge the jury, and require a defendant to stand trial before another jury when failure so to do will defeat the ends of justice to either or both parties." (Syl. ¶ 2.)

In the *Hansford* case the defendant objected to a mistrial; in *Gray* defendant was silent. In the present case there was certainly no objection by defendant. It is unnecessary to determine whether the statement of defendant's counsel amounted to consent.

It would have been better practice to have taken the statement of the juror, Zavala, in the absence of the other jurors, but in view of the gravity of the occurrence, which we consider greater than in either *Hansford* or *Gray*, we cannot see abuse of discretion in the trial court's determination that a mistrial was of manifest necessity.

In view of the holding of the United States Supreme Court in *Benton v. Maryland*, 395 U. S. 784, 23 L. Ed. 2d 707, 89 S. Ct. 2056, which imposed the federal jeopardy rule on state jurisdictions, we have examined that court's most recent opinion dealing with the subject in *United States v. Jorn*, 400 U. S. 470, 27 L. Ed. 2d 543, 91 S. Ct. 547. In *Jorn* the conviction was set aside, but the court re-affirmed previous holdings pertaining to necessity announced in *Wade v. Hunter*, 336 U. S. 684, 93 L. Ed. 974, 69 S. Ct. 834, reh. den. 337 U. S. 921, 93 L. Ed. 1730, 69 S. Ct. 1152; and *Thompson v. United States*, 155 U. S. 271, 39 L. Ed. 146, 15 S. Ct. 73, both of which were cited in support of our decision in *State v. Gray*, supra.

Defendant cites the cases of *In re Brown*, 139 Kan. 614, 32 P. 2d 507, and *Kamen v. Gray*, 169 Kan. 664, 220 P. 2d 160. Neither case deals with the proposition whether the disqualification of or tampering with a juror necessitates a mistrial. We find nothing therein that lends support to defendant in the instant case.

We are convinced the facts surrounding the declaration of the mistrial in defendant's first trial was of such a nature that neither defendant nor the State could have received a fair trial; thus it cannot be said the trial court's action was an abuse of discretion.

Defendant next complains of the introduction by the State of evidence of two prior convictions of burglary. In Instruction No. 4 the court properly limited the jury's consideration of the prior convictions to the question of defendant's motive, intent, pattern of conduct or mode of operation, as such matters were relevant to the offenses charged. The defendant's chief argument on this point is

that the prior convictions were too remote in time (eleven and sixteen years) to be of any probative value on the issue of defendant's guilt in the instant case. There is no merit in defendant's contention. We have repeatedly held that the time of a prior offense goes only to its weight. (*State v. Jamerson*, 202 Kan. 322, 449 P. 2d 452 and cases cited therein.) If a prior offense is similar it is ordinarily admissible and showing it to be identical is unnecessary. (*State v. Poulos*, 196 Kan. 287, 411 P. 2d 689, cert. den. 385 U. S. 827, 17 L. Ed. 2d 64, 87 S. Ct. 63; and *State v. Wright*, 194 Kan. 271, 398 P. 2d 339.)

Defendant next contends he was erroneously denied the opportunity to present exculpatory evidence. Defendant says he was unduly restricted in his cross-examination of several prosecution witnesses and was denied access to a police report which he claims was used by one of the State's witnesses in his testimony. We have carefully examined the excerpts of the trial transcript reproduced by defendant, pertaining to the matters raised, and find nothing presented which requires a reversal.

We turn next to what appears to be the most serious point raised in this appeal. Defendant claims the trial court failed to set forth all of the necessary elements of the offenses charged.

We find no merit in defendant's contention with respect to the charge of possessing burglary tools. Defendant submitted a requested instruction on this charge which appears to be identical with the instruction approved by this court in *State v. Hart*, 200 Kan. 153, 434 P. 2d 999 (Instruction No. 9, Appendix, p. 164). The trial court did not give the requested instruction, but instructed as follows:

"The law of Kansas also provides that any person who knowingly has in his custody, with an intent that they be used for purposes of burglary, any instrument or mechanical device commonly used for breaking into stores, shops or dwelling houses, shall be adjudged guilty of possession of burglary tools."

The court properly defined the term "custody" in a following instruction. While the instruction given is not as comprehensive or desirable in form as that reproduced in the "Appendix" in the *Hart* opinion, nevertheless, we believe it serves to inform the jury of the essential elements of the offense as identified in *State v. Hart*, supra, wherein we said:

". . . the gravamen of the offense proscribed by the statute is, so far as this case is concerned, the possession of burglary tools intending they be put to a burglarious use. . . ." (p. 157.)

It is the rule of this jurisdiction that error cannot be predicated on the refusal to give certain requested instructions when those given cover and include the substance of those which are refused. (*State v. Jorgenson,* 195 Kan. 683, 408 P. 2d 683.)

We next direct our attention to what the defendant contends is the fatal omission of the element of intent in the instructions given pertaining to the offenses of burglary and larceny. We cannot agree with defendant's contention concerning intent with respect to larceny, but we are compelled to hold the instructions pertaining to burglarly to be defective in this regard.

In Instruction No. 2 the court instructed on burglary in the third degree as follows:

"The law of Kansas provides that any person who shall be convicted of breaking and entering, in the daytime, any dwelling house in which there shall be at the time goods, wares, merchandise or other valuable thing kept or deposited, shall be adjudged guilty of burglary in the third degree.

"The law of Kansas also provides that if any person in committing burglary shall also commit a larceny, he shall on conviction, be adjudged guilty of larceny while committing burglary."

In the court's prefatory Instruction No. 1 burglary was correctly defined in general terms, but no mention was made of the element of "with the intent to commit a larceny or felony thereon," which was also omitted in Instruction No. 2.

In Instruction No. 3 the court instructed generally on intent as follows:

"Intent is a necessary element in the commission of crime. Direct evidence is not required to show the intent with which an act is committed. Intent is a state of mind which may be inferred from the commission of an unlawful act and from all the facts and circumstances in the case."

While it may be said Instruction No. 3 adequately apprised the jury of intent as a necessary element of a criminal offense, it fails to inform as to the specific intent required in burglary. The elements of burglary in the third degree are defined in K. S. A. 21-521 (now K. S. A. 1970 Supp. 21-3715, 21-3716) in terms of reference to the circumstances of burglary in the second degree (K. S. A. 21-524, repealed L. 1969, Ch. 180, Sec. 21-4701), which in turn refers to the circumstances of burglary in the first degree. Burglary in the first degree, as defined in K. S. A. 21-513 (now K. S. A. 1970 Supp. 21-3715, 21-3716), includes as an element "with intent to commit some felony or any larceny therein." It follows that such intent is a necessary element in burglary in the third degree and must exist at the

time of the breaking and entering. (*State v. Gatewood,* 169 Kan. 679, 221 P. 2d 392.)

The information in each case included the element referred to, but the informations were not included in the instructions. In other words, the element of "with intent to commit some felony or any larceny therein" with reference to the burglary charges was totally omitted, nor can it be reasonably inferred that the jury was so informed by any of the other instructions given.

K. S. A. 62-1447 [now K. S. A. 1970 Supp. 22-3414], provides:

"The judge must charge the jury in writing and the charge shall be filed among the papers of the cause. In charging the jury he must state to them all matters of law which are necessary for their information in giving their verdict. . . ."

Instructions contemplated by the statute are those which are indispensable. (*State v. Younger,* 70 Kan. 226, 78 Pac. 429.) In a burglary prosecution "intent to commit some felony, or any larceny therein" is a necessary element; thus the statute places a positive duty upon the trial court to instruct thereon. (*State v. Roth,* 200 Kan. 677, 438 P. 2d 58; and *State v. Gatewood,* supra.)

In considering the duty of a trial judge under the provisions of the statute, which now appears as 62-1447, *supra,* Chief Justice Johnston spoke for the court in *State v. Lynch,* 86 Kan. 528, 121 Pac. 351, in these words:

"This provision does not require any particular form of instruction, nor that the judge shall, without request, instruct upon every minute detail of the issue, but, whether requested or not, the definition of the offense charged, and a statement of its essential elements, are indispensable (citing cases)." (p. 531.)

See, also, *State v. Clark,* 69 Kan. 576, 77 Pac. 287; and *State v. Poole,* 65 Kan. 713, 70 Pac. 637.

In accord with what has been said the burglary convictions must be reversed and defendant given a new trial thereon.

In the informations pertaining to both the Childress and Rigsby burglaries, in addition to burglary, defendant was charged with stealing and carrying away specifically listed items of personal property of the value of more than $50 and the jury was instructed accordingly, together with the instruction previously noted concerning intent. We find no merit in defendant's challenge of the instructions with respect to intent as related to the larceny charges.

Although, they may be charged in the same count of an information under 21-524, *supra,* larceny and burglary are separate and

distinct offenses. There is no compound offense of burglary and larceny. (*State v. Bratcher,* 105 Kan. 593, 185 Pac. 734; and *State v. Mooney,* 93 Kan. 353, 144 Pac. 228.) Even though charged in the same indictment a conviction may be had for one offense, notwithstanding an acquittal for the other. (*State v. Ingram,* 198 Kan. 517, 426 P. 2d 98.) In the recent case of *State v. Baker,* 197 Kan. 660, 421 P. 2d 16, a prosecution for burglary and larceny in connection therewith, an essential element of burglary was omitted in the information. The defect was jurisdictional and thus the burglary conviction was held void, but a larceny conviction was affirmed. There we held:

"Under an information charging the defendant with burglary, and larceny of property worth more than fifty dollars committed in connection therewith, the defendant's conviction of the offense of grand larceny, supported by substantial, competent evidence, may be sustained, notwithstanding that his conviction on the burglary charge is void." (Syl. ¶ 4.)

In the instant case the larceny convictions are supported by substantial, competent evidence in the form of eyewitness testimony and evidence showing recent possession of stolen property.

We have carefully examined other points raised by defendant pertaining to instructions and other alleged trial errors and find no error that would justify the reversal of his convictions and sentences for grand larceny and possession of burglary tools.

Accordingly, the trial court's judgments and sentences for the offenses of grand larceny and possession of burglary tools are affirmed and its judgments and sentences for the burglary offenses are reversed and the cause remanded for further proceedings.

It is so ordered.