(586 P.2d 279)
No. 49,387

STATE OF KANSAS, *Appellee,* v. WILLIAM CLYDE TURNER, *Appellant.*

Opinion filed November 9, 1978.

*David J. Wood,* of Wichita, for the appellant.

*Robert Sandilos,* assistant district attorney, *Curt T. Schneider,* attorney general, and *Vern Miller,* district attorney, for the appellee.

Before ABBOTT, P.J., REES and SWINEHART, JJ.

SWINEHART, J.: William Clyde Turner appeals from a jury conviction on a charge of unlawful possession of a firearm (K.S.A. 21-4204). The defendant raises three points of error: that the court abused its discretion (1) in denying his motion for a mistrial; (2) in admitting prosecution rebuttal testimony concerning evidence procured through an illegal search and seizure; and (3) in denying certain requested instructions.

The defendant and two others were tried for aggravated robbery and various weapons violations. All were acquitted on the robbery charge. The defendant was found guilty of a violation of K.S.A. 21-4204.

On the evening of June 11, 1976, Sedgwick County sheriff's officers staked out a grocery store in Wichita. They had information that the store would be robbed that evening. They had been told to be on the lookout for a Cadillac that belonged to the defendant McCarther and a yellow Mustang belonging to the defendant Turner. Three men were picked up as a result of this stakeout—McCarther, Turner and Hurst.

Turner was arrested driving the Mustang. At the time he was arrested, his car was searched. A gun was found in the car, hidden from sight in a bag of dirty clothing. The gun, a Smith & Wesson 9-mm. automatic, was seized by police officers. Since the defendant had been convicted of a felony within a five-year period immediately preceding this incident, his possession of the gun was unlawful; accordingly, he was charged with unlawful possession of a firearm pursuant to K.S.A. 21-4204. The next day while he was in custody, an officer went to his apartment. A search warrant was not obtained. Turner's mother used her key to his apartment to let the officer in. She did not occupy the apartment. As a result of this warrantless search, the officer seized a box that a 9-mm. Smith & Wesson was originally packaged in and a clip for the same type gun.

At the trial, the defendant contended that he had been framed. He alleged that he had no knowledge that the gun was in his car, that it had been planted there by the same individual who informed the police that a robbery was going to take place at the grocery store that night. The defendant presented the testimony of a number of witnesses who claimed that the informant, one Flescher, had threatened to frame the defendants. The defendant Turner's theory is that Flescher had planted these items in his vehicle and in his apartment. At the trial, he testified that he had no knowledge that the gun was in the car. To rebut this testimony, the officer who searched the defendant's apartment was permitted to testify that he had found a gun box, cartridge clip and a gun cleaning kit in the defendant's apartment. The gun box was for a 9-mm. Smith & Wesson, as was the clip and the cleaning kit.

The defendant's first point of error arises out of the following facts. After the trial commenced it was called to the attention of the court that a juror had seen and spoken to a witness at a social event during the course of the trial. That witness was Detective

Reed, who testified at the trial that the 9-mm. Smith & Wesson gun found in the possession of the defendant was his gun and that it had been stolen from his home in early 1976. Detective Reed also testified that it had been determined that this defendant had not participated in the burglary because he was in jail at the time it occurred. The conversation between the juror and Detective Reed occurred at a square dance, where the juror sought out Detective Reed inquiring about his presence in the courtroom. Detective Reed, in response, related the above facts. These facts were brought to the court's attention out of the presence of the jury, and at this time the defendant moved for a mistrial. Defendant's motion was denied.

K.S.A. 22-3423 provides in part that the "trial court may terminate the trial and order a mistrial at any time that he finds termination is necessary because . . . (c) Prejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution. . . ."

Here, the conduct involved a juror and a witness. A recent case, *State v. Jakeway,* 221 Kan. 142, 558 P.2d 113 (1976), fairly summarizes the rules governing the misconduct of a juror warranting declaration of a mistrial under K.S.A. 22-3423(c):

"Whether a specific instance of juror conduct falling within the broad statutory grounds defined in K.S.A. 22-3423(c) requires a declaration of mistrial is a matter of discretion with the trial court. (*State v. Culbertson,* 214 Kan. 884, 522 P.2d 391; *State v. Finley,* 208 Kan. 49, 490 P.2d 630.) Jury misconduct will not constitute a ground for reversal unless it is shown to have substantially prejudiced the rights of either the defendant or the prosecution. (K.S.A. 22-3423[c]; *State v. Collins,* 215 Kan. 789, 528 P.2d 1221; *State v. Arney,* 218 Kan. 369, 544 P.2d 334.)

"In determining whether a particular instance of improper communication between a juror and a witness amounts to prejudicial misconduct which will prevent a fair trial the nature of the communication is of considerable significance. When the communication is entirely unrelated to defendant's case courts generally find insufficient prejudice to require a mistrial (*State v. Culbertson,* supra; see also Anno., Jurors—Communications With Witnesses, 9 A.L.R.3d, § 9, p. 1289.) When the communication is related to the defendant's case the trial court may find prejudice and then a mistrial will be declared. (*State v. Finley,* supra; see also Anno., Jurors—Communications With Witnesses, 9 A.L.R.3d, § 10, p. 1294.)" p. 148.

In addition to these rules, an important consideration is whether or not the juror thinks that he can be impartial. In *State v. Finley,* 208 Kan. 49, 490 P.2d 630 (1971), the Supreme Court held

that the juror's admission that he could not be impartial was a controlling consideration and affirmed the trial court's grant of a mistrial.

In *Finley*, the Supreme Court approved the trial court's grant of a mistrial in a situation where the defendant's girlfriend sought out one of the jurors and tried to convince him that the defendant was not guilty. This sort of communication is, of course, substantially different from that in the case at hand.

In *State v. Arney*, 218 Kan. 369, 544 P.2d 334 (1975), the Supreme Court held that it was not error for the trial court to refuse to grant a new trial for juror misconduct. The misconduct in question consisted of the juror's investigation of the scene of the crime and his report back to the other members of the jury. Although the Court recognized that the juror's actions constituted misconduct, it was held that the trial court's decision not to grant a new trial was not an abuse of discretion because the defendant had made no showing that his rights were substantially prejudiced.

In *State v. Rhodes*, 219 Kan. 281, 546 P.2d 1396 (1976), the Supreme Court approved the trial court's refusal to grant a mistrial for alleged juror misconduct. In that case a juror talked with the complaining witness in the hall during a recess. They both testified that they did not discuss the case. They knew each other because the juror bought fish at the complaining witness's fish market. They testified that they discussed fish.

In *State v. Henson*, 221 Kan. 635, 562 P.2d 51 (1977), the Supreme Court approved the trial court's refusal to grant a mistrial when a juror and the State's expert witness exchanged pleasantries in the hall. In an *in camera* examination, both testified that they did not know of each other's role in the trial and that nothing was said about the case.

In *State v. Jakeway*, 221 Kan. at 148, a juror talked to the complaining witness and the juror asked the witness why he was there. The witness replied that he was a witness in a case. He did not explain which case it was, and both testified that they exchanged comments about the juror's business of hauling hay.

The testimony presented by the juror and Detective Reed out of the presence of the jury was that the conversation was very general in nature. The juror said he did not think he would be prejudiced, and that he could hear all of the evidence and be

impartial in his consideration of the issues. Detective Reed's testimony was only to the effect that the 9-mm. Smith & Wesson gun found in the defendant's car was his gun, that it had been stolen from his home at a time prior to this offense, and that he was satisfied the defendant was not involved with that theft.

This testimony had very little, if any, bearing on the defendant's guilt or innocence of possession of a gun in violation of K.S.A. 21-4204. Further, the defendant has failed to show that this incident in any way affected his right to a fair and impartial jury to determine his guilt or innocence. The trial court did not abuse its discretion in denying the new trial.

The defendant's second ground of error deals with the State's evidence admitted to rebut the defendant's testimony. The testimony arose out of a search of the defendant's apartment a day subsequent to his arrest. This search was conducted by the police without the benefit of a search warrant. Access to the apartment was gained by obtaining a key from defendant's mother. It is conceded that the testimony admitted would not have been admissible in the State's case in chief because of Fourth Amendment violation.

The illegal search produced a gun box, a cartridge clip and a gun cleaning kit for a 9-mm. Smith & Wesson, the caliber and make of the gun found in the sack of dirty clothing in the defendant's car when he was arrested. The officer who conducted the search was permitted to testify, over the defendant's objection, about the presence of these articles in defendant's apartment in order to rebut the testimony of the defendant that he had been set up on this charge and that he had never seen or possessed the gun found in his car. The defendant notes in his brief that the articles found in the apartment were not offered and admitted as evidence. Whether these items were admitted or merely discussed in testimony makes no difference vis-a-vis the Fourth Amendment rights of the defendant.

K.S.A. 21-4204 (unlawful possession of a firearm) requires the knowing and intentional possession of the firearm. Here, if the jury were to believe the defendant's testimony, he would not be guilty of a violation of this law. *State v. Neal,* 215 Kan. 737, 529 P.2d 114 (1974).

The defendant testified on direct examination that he did not know that the gun in question was in the sack on the day of his

arrest. On cross-examination and without objection to the prosecutor's question, the defendant testified that he had never seen or possessed the gun. Even though the officer's testimony might be held to have no relevance or probative value to prove knowing and intentional possession of the gun on the date of arrest, we conclude that it was relevant rebuttal of the defendant's denial of possession of the gun at any time. It challenged the defendant's credibility. The weight to be given the testimony was up to the jury.

Analysis of case law dealing with the admissibility for impeachment or rebuttal purposes of evidence otherwise made inadmissible by the exclusionary rule concerning illegally obtained evidence indicates that the trial court did not err.

In *Walder v. United States,* 347 U.S. 62, 98 L.Ed. 503, 74 S.Ct. 354 (1954), the United States Supreme Court held that for the purpose of impeachment of the defendant's testimony it was permissible to introduce testimony describing physical evidence seized from the defendant's home in violation of the Fourth Amendment. Walder was accused of selling heroin. At trial, he denied participation in the narcotic sale and further claimed that he had never dealt in or possessed any narcotics. In order to impeach his testimony, the prosecution was permitted to introduce testimony that heroin had been seized from him two years previously in a separate and distinct incident. In *Walder,* the Supreme Court said:

"He must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief. Beyond that, however, there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility." p. 65.

In *United States v. Fox,* 403 F.2d 97 (2d Cir. 1968), the Second Circuit Court of Appeals was asked to apply the *Walder* theory to permit admission of statements obtained in violation of the *Miranda* warnings. The Court refused to extend *Walder* to permit the use of statements illegally obtained in order to impeach the defendant's credibility on collateral matters or matters bearing directly on the question of guilt or innocence. The Court there expressed no view concerning the continued viability of the *Walder* decision with regard to the admission of evidence seized in violation of the Fourth Amendment but did hold that the

*Miranda* decision barred any trial use of statements taken in violation of the *Miranda* requirements.

A few years later, the United States Supreme Court had occasion to rule on the admissibility of statements obtained in violation of *Miranda* in order to impeach a defendant's testimony. In *Harris v. New York,* 401 U.S. 222, 28 L.Ed.2d 1, 91 S.Ct. 643 (1971), the Court overruled the effect of the *Fox* decision and revitalized the theory beyond *Walder,* extending it to include impeachment on matters directly relating to the crimes for which a defendant was on trial. The Court said:

"It is true that Walder was impeached as to collateral matters included in his direct examination, whereas petitioner here was impeached as to testimony bearing more directly on the crimes charged. We are not persuaded that there is a difference in principle that warrants a result different from that reached by the court in *Walder.* Petitioner's testimony in his own behalf concerning the events of January 7 contrasted sharply with what he told the police shortly after his arrest. The impeachment process here undoubtedly provided valuable aid to the jury in assessing petitioner's credibility, and the benefits of this process should not be lost, in our view, because of the speculative possibility that impermissible police conduct will be encouraged thereby. *Assuming that the exclusionary rule has a deterrent effect on proscribed police conduct, sufficient deterrence flows when the evidence in question is made unavailable to the prosecution in its case in chief."* p. 225. (Emphasis added.)

The Court further said:

"Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. . . . Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process. . . ." p. 225.

See also *Stone v. Powell,* 428 U.S. 465, 482-489, 49 L.Ed.2d 1067, 96 S.Ct. 3037 (1976).

Although we have found no Kansas cases that specifically deal with the admissibility of rebuttal evidence obtained in violation of the Fourth Amendment, the Kansas Supreme Court has followed the *Harris* rule in holding that evidence obtained in violation of the Fifth Amendment is admissible to rebut a defendant's testimony. In *State v. Boone,* 220 Kan. 758, 556 P.2d 864 (1976), the Supreme Court held that a statement obtained in violation of the *Miranda* rule was admissible in order to rebut the defendant's trial testimony. There the Court said:

"Evidence which is inadmissible in the case in chief because of noncompliance

with *Miranda* requirements may, however, be used for impeachment under certain circumstances. *Harris v. New York,* 401 U.S. 222, 28 L.Ed.2d 1, 91 S.Ct. 643 (1971), held that statements of a defendant obtained in violation of *Miranda* rules, so as to render them inadmissible to establish the guilt of the defendant, may be used for purposes of impeachment where (1) such statements are inconsistent with defendant's trial testimony bearing directly on the crimes charged, and (2) defendant makes no claim that his statements were coerced or involuntary. *See* 5 Am. Jur. Trials, Excluding Illegally Obtained Evidence, § 32, p. 99 (1976 Supp.)." p. 768.

The *Boone* court relied on an earlier Kansas case, *State v. Osbey,* 213 Kan. 564, 517 P.2d 141 (1973), where the Court said: "[T]he shield provided by *Miranda* could not be perverted into a license to use perjury by way of a defense, free from risk of confrontation with prior inconsistent utterances." p. 574.

Thus, for the reasons set forth above we find that the trial court did not err in the admission of this testimony to rebut the defendant's testimony.

Finally, the defendant argues that the court erred in refusing his requested instructions.

The instructions which the defendant alleges should have been given are set forth below:

"2.  The defendant William C. Turner is charged with the crime of unlawful possession of a firearm. The defendant pleads not guilty.

To establish this charge, each of the following claims must be proved:

1.  That the defendant knowingly had possession of a firearm with a barrel less than twelve (12) inches long;

2.  That the defendant within five years preceding such possession had been released from custody for a felony; and

3.  That this act occurred on or about the 11th day of June, 1976, in Sedgwick County, Kansas."

"4.  At times during the trial, the Court has ruled upon the admissibility of evidence. You must not concern yourself with these rulings. I have not meant to indicate any opinion as to the facts or as to what your verdict should be by any ruling that I have made or anything that I have said or done."

"5.  Evidence has been admitted tending to show that on other occasions two of the defendants committed offenses similar to those with which they are charged in this case. You will consider the evidence concerning Razook and Brown only in the case against the defendant McCarther and the evidence concerning Luper only in the case against the defendant Turner. The LaCount evidence may be considered against either or both of these defendants. You may consider this evidence as it relates to the plan, preparation or identity of the persons who allegedly robbed the Seneca IGA store on May 27, 1976. You will not consider this evidence for any other purpose."

"6.  You should give separate consideration to each defendant. Each is entitled to have his case decided on the evidence and the law which is applicable to him.

Any evidence which was limited to William C. Turner should not be considered by you as to any other defendant. Any evidence which was limited to Richard L. McCarther should not be considered by you as to any other defendant. Any evidence which was limited to Joseph T. Hurst should not be considered by you as to any other defendant."

Among the instructions which the court actually gave to the jury are the following:

"2. Count Six charges the defendant William C. Turner with Unlawful Possession of a Firearm. In order to establish this charge, the following elements must be proved:

1. That the defendant possessed a firearm with a barrel of less than 12 inches;

2. That he did so within five years after having been released from custody for a felony;

3. That this act occurred within the two years prior to June 14, 1976 (the date this case was filed) in Sedgwick County, Kansas. . . .

You should give separate consideration to each defendant. Each is entitled to have his case decided on the evidence and the law applicable to him."

"4. The possession and control of a gun contemplated by Counts Two through Six is a willful or knowing possession of the weapon with the intent to control the use and management thereof. Ownership of the weapon is not required."

"5. Evidence has been admitted tending to show that on other occasions two of the defendants committed offenses similar to those with which they are charged in this case. You may consider this evidence as it relates to the plan, preparation or identity of the persons who allegedly robbed the Seneca IGA store on May 27, 1976. You will not consider this evidence for any other purpose. You will consider the evidence concerning Razook and Brown only in the case against the defendant McCarther and the evidence concerning Luper only in the case against the defendant Turner. The LaCount evidence may be considered against either or both of these defendants."

"7. Since the intent with which an act is committed is nothing more than a mental state of the party accused, direct proof of it is not required. The intent is generally derived from and established by the surrounding facts and circumstances as shown by the evidence, and may be established by proof that the conduct of the defendant was purposeful and intentional and not accidental. In any event, a person is presumed to intend the natural and probable consequences of his voluntary acts; this presumption may be overcome if you are persuaded from the evidence that the contrary is true.

So, in this case, the intent with which the defendant committed the offense(s) charged, if you find that he committed such offense(s), must be determined by you and from all the evidence in the case."

In reviewing the propriety of the instructions given to the jury, the Supreme Court has said: "Error cannot be predicated on the refusal to give specific requested instructions where those which were given cover and include the substance of those refused." *State v. Ponds and Garrett,* 218 Kan. 416, Syl. ¶ 3, 543 P.2d 967

(1975). Applying this rule to the defendant's allegation of error, it is clear that defendant's proposed instruction No. 2 was substantially covered by the court's instructions No. 2, No. 4, and No. 7. These instructions adequately informed the jury that possession of the weapon must be knowledgeable and intentional. The defendant's instruction No. 5 was given to the jury in the court's instruction No. 5 in virtually the same form. The only difference is the location of some of the sentences. Although the defendant argues that the location of the sentence "you will not consider this evidence for any other purpose" would have made a more lasting impression on the jury had the instruction that he proposed been submitted to the jury, it is impossible to say that the court's instruction No. 5 did not substantially cover and include his proposed instruction. It appears that the substance of the defendant's instruction No. 6 was included in the last paragraph of the court's instruction No. 2. Examination of the two shows that the defendant's instruction No. 6 is simply a more elaborate explanation of what the court said in its instruction No. 2.

The defendant's requested instruction No. 4 was taken from PIK Crim. 51.05. The trial court gave no similar instruction to the jury. The only instruction which the trial court gave which is similar to the requested instruction is No. 1 where the court said: "You may consider as evidence whatever is admitted in the trial as part of the record, whether it is the testimony of witnesses, an article or document, or other matter admitted." Also, in instruction No. 9, the court said: "Statements, arguments, and remarks of counsel are intended to help you in understanding the evidence and applying the law. They are not evidence, and you must disregard any statement which has no basis in the evidence." While it cannot be said that these instructions substantially cover and include the requested instruction, it does not appear that the trial court committed reversible error in refusing to give the requested instruction No. 4. Although an instruction similar to instruction No. 4 undoubtedly should be given as a matter of good trial practice, the defendant has demonstrated no prejudice which resulted to him from the failure to give the instruction. No cases have been located that hold that an instruction similar to PIK Crim. 51.05 must be given.

Since the defendant has not demonstrated any prejudice flowing from the court's refusal to give the instructions requested, this court will not reverse on that ground.

Judgment of the trial court is affirmed.

ABBOTT, J., dissenting: I would reverse and remand for a new trial due to abuse of discretion on the part of the trial judge in admitting rebuttal testimony and permitting cross-examination of defendant concerning illegally obtained evidence seized during an unlawful search of defendant's home.

Defendant was charged with unlawful possession of a 9-mm. Smith & Wesson handgun. A police officer, Harold A. Reed, testified that the handgun was his and had been stolen in a burglary. He identified the handgun by its serial number. He further testified that he knew who stole the gun and that it was not the defendant.

The defendant testified on direct that he had not placed the handgun in the sack of clothing where it was found by the police. Then, on cross-examination, the following took place:

"Q If I understand your testimony, this 9 mm weapon you have never seen before, never been in your possession. Is that correct?
"A That is true.
"Q Do you know why then a clip for that weapon would be located in your apartment on South Sycamore?
"MR. WOOD: Objection, no foundation for this evidence.
"THE COURT: I assume you are prepared to present evidence along that line.
"MR. ARBUCKLE: Yes.
"THE COURT: Overruled."

On rebuttal, over the objection of defendant, another officer was permitted to testify that the police had obtained a key to defendant's apartment from defendant's mother, who did not live with him or have any interest in the premises he occupied, and made a search. The officer further testified he had found a handgun in the house (he was not asked and did not testify as to its caliber or make), and that he had found "the original type carton that the Smith and Wesson is packaged in." The box also contained a cleaning rod. He also testified that an empty clip for a 9-mm. Smith & Wesson was found in the apartment and that the clip was similar to the one in the handgun which defendant was charged with possessing. The clip, carton and cleaning rod were not produced at trial.

Although the introduction of the evidence concerning the carton, clip and cleaning rod may have been relevant, I believe that

the prejudicial effect far outweighs any probative value it had. However, I would reverse and remand for a different reason. There is no showing of perjured testimony of the defendant as there was in the cases relied on by the majority. *Walder v. United States,* 347 U.S. 62, 98 L.Ed. 503, 74 S.Ct. 354 (1954); *Harris v. New York,* 401 U.S. 222, 28 L.Ed.2d 1, 91 S.Ct. 643 (1971); *State v. Boone,* 220 Kan. 758, 556 P.2d 864 (1976). Here the defendant merely stated that he did not put the gun in the sack where it was found. The prosecutor then took it upon himself to prejudice defendant by referring to illegally obtained evidence that clearly was not admissible. At that point, all that was before the court concerning the handgun was its owner's testimony that it had been stolen from him. The owner did not testify that the handgun was in a carton, or that it had a cleaning rod or an extra clip. The defendant did not at that point or at any time thereafter deny he had a 9-mm. Smith & Wesson, or an original carton for a Smith & Wesson containing a clip and a cleaning rod. Defendant, on cross-examination, did deny he had ever had possession of the particular 9-mm. Smith & Wesson which formed the basis of the state's case.

Analogous cases include *Agnello v. United States,* 269 U.S. 20, 70 L.Ed. 145, 46 S.Ct. 4 (1925) and *United States v. James,* 555 F.2d 992 (D.C. Cir. 1977). In both, the introduction of illegally seized evidence was held to be error, as the defendant had not made the kind of general, exculpatory denials that have been held sufficient to allow the admission of such tainted evidence as is necessary to avoid perjury. In neither case was it found that the defendant had "opened the door" to impeachment by his testimony, either on direct examination or on rebuttal, despite the efforts of the prosecutor to elucidate such general denials. Even *Walder,* a case the majority relies on heavily, recognizes that a mere denial of complicity, as was present here, is not enough.

Furthermore, the prosecutor not only seized upon the opportunity to discredit defendant, but in my opinion he went further. He referred to the handgun that defendant was charged with having in his possession and asked why "a clip for *that* weapon" (emphasis supplied) was found in defendant's apartment. He then assured the court in the presence of the jury that he was prepared to present evidence along that line, leaving the jury with the impression that the clip found in the defendant's apartment was

part of a set belonging to the handgun. Then, on rebuttal, an officer testified about the items found in defendant's apartment. Again, the prosecutor referred to the handgun admitted in evidence which defendant was charged with possessing and had the officer identify it as a 9-mm. Smith & Wesson. He then asked, "Did you find any other parts for *that* weapon other than the box and cleaning equipment?" (emphasis supplied), whereupon the officer testified he had indeed also found a clip for a 9-mm. Smith & Wesson. Twice the prosecution inexcusably implied that the original handgun carton, clip and cleaning rod were parts for the gun found in defendant's car when no direct evidence was presented to support that conclusion.

Defendant's testimony was not sufficiently inconsistent with the physical items unlawfully seized from his home to warrant a police officer testifying as to their discovery, and, when coupled with the prosecutor's assurance to the court in the presence of the jury that the items seized were in effect a part of the gun defendant was attempting to show was planted, the conviction secured by indefensible means constituted prejudicial error which denied defendant a fair trial.

I would reverse and remand for a new trial.