No. 33,812

The State of Kansas, *Appellee*, v. Sam Boller, *Appellant*.

(77 P. 2d 950)

Opinion filed April 9, 1938.

*John H. Gerety* and *Aubrey G. Dresie*, both of Wichita,. for the appellant.

*Clarence V. Beck*, attorney general, *C. Glenn Morris*, assistant attorney general, and *J. Rodney Stone*, county attorney, for the appellee.

The opinion of the court was delivered by

Thiele, J.: Defendant was convicted of having knowingly bought and received stolen automobiles, and appeals, assigning six claims of error.

He presents his first two claims of error together. They are that he did not have a fair and impartial trial, and that the verdict and judgment are contrary to the law and the evidence. Beyond mere statement of his contention, he presents no specific claim of lack of a fair trial except such as may be implied from matters which were developed on motion for a new trial, which will be considered later. There is no showing, nor any claim in and of itself, that the verdict

and judgment are contrary to law. The argument is based almost entirely on a showing that certain witnesses contradicted themselves or gave testimony inconsistent or at absolute variance with that of other witnesses, directing our attention to statements favorable to the appellant, and calling attention to the admitted criminal records of some of the witnesses. The jury saw all of these witnesses, knew of the inconsistencies and disputes in their testimony, knew also that where four or five men are engaged in working on and changing the appearance of stolen cars so that they could be sold with less chance of detection, there would be a disposition to shift blame. Unless error from another source appears, the jury's conclusion as to the weight to be given this testimony must stand. Our examination of the record shows there is ample testimony to support the state's claim that appellant received stolen automobiles, and kept them in a garage owned and managed by him, where their appearance was greatly changed by trading wheels, interchanging fenders, putting on new paint, altering motor numbers, etc., the cars being later sold to other persons, the proceeds going to appellant.

Appellant filed a motion for a new trial. It was denied, and thereafter a motion for rehearing of the motion for a new trial was filed and later denied. The remaining specifications all deal with claimed error in connection therewith and will be treated together.

Although the motion for a new trial contained other grounds, the one seemingly relied on, and which was the basis of the motion for rehearing, and on which the complaint made on appeal is based, was that the jury received evidence not authorized by the trial court. On the hearing of the motion for a new trial, appellant called as a witness one of the jurors and asked him about being approached by persons other than jurors, and the fact that another juror was supposed to be a personal friend of the appellant. The state's objection was sustained. Objection was also sustained to questions as to whether certain jurors made statements in regard to relationship between appellant and one of the state's witnesses pertaining to matters occurring before the transactions involved in the action, it being claimed the statements were outside the evidence. A third question to which objection was sustained was whether one juror had threatened another with prosecution for perjury if he failed to vote for conviction. Another juror was called, and after some questions were asked and objections sustained, appellant's then counsel made an oral proffer of evidence, which offer was refused, the motion

was denied and thereafter a journal entry was filed covering all matters connected with the trial. This journal entry, in part, shows that after the jury returned its verdict, at the request of defendant the jury was polled, and each juror stated the verdict returned was the verdict of them and each of them. Thereafter, defendant, by other counsel, filed his motion for a rehearing of the motion for a new trial, attaching thereto the affidavits of four jurors. On the hearing of this last motion, the state's objection to these affidavits being received in evidence was sustained. During the hearing of the motion, appellant's counsel offered to read these affidavits. The journal entry recites:

"But the court advised the defense that this would not be necessary as the court had a copy of the aforesaid pleadings, and was fully advised of the contents thereof."

and, after stating the affidavits were offered:

"The proffer was refused by the court. The court then being advised in all of the premises, found that the motion should be denied."

The affidavits covered about the same matters as were inquired about at the hearing of the motion for a new trial or of which proffer was then made. It may be here stated that in part the affidavits contain conclusions rather than statements of facts. Juror Prouty stated he was approached on the street by one Shacklett, who told him the jury would never agree because juror Adamson was a personal friend of the defendant; that he informed another juror who so accused juror Adamson, which Adamson denied; that he heard one of three named jurors make a statement that defendant Boller had been acquainted with witness Wharry before the events complained of in the criminal action, and that such was not a part of the evidence introduced in the case and was not known to the jury until the statement was made, and also that one of the three named stated he knew of his personal knowledge that Boller and Jackson was a crooked outfit and that other dealers told him they handled "hot" cars. Juror Adamson stated that another juror approached him and said he had heard he was a personal friend of Boller and accused him of lying when being examined for jury service, that he had denied the charge and was threatened with prosecution for perjury "unless I pleaded guilty," and thereafter he voted for conviction. The remainder of his affidavit is similar to that of Prouty. Juror Penner deposed that one Shorty Dickinson informed him "as long as Adamson was on the jury it would be a hung jury." The

remainder of his affidavit, as well as that of Juror Mauck, was largely corroborative of the statement that some juror said Boller and Jackson were crooked.

Appellant insists it was error for the trial court not to receive these affidavits and on the strength of the statements therein to grant a rehearing of the motion for a new trial, and in substantial effect, that it was error not to grant a new trial. Before examining the authorities cited, we may observe that although the trial court did refuse to admit the affidavits in evidence, it made it clear it was aware of their contents. It was also fully aware that the jury, at the request of the defendant, had been polled, and that at that time each juror had his opportunity to state that the verdict did not have his approval, assuming that to have been a fact. The trial court was also aware that the statements in the affidavits were contrary to the statements made when the jury was polled, and the effect of the depositions was to impeach the verdict. It appears that under the circumstances the trial court had before it for decision whether the jurors spoke the truth when they were polled or when they later made their affidavits.

Appellant contends, however, that the affidavits show the jury considered as evidence statements made by certain of the jurors. A comparison of those statements with the evidence will be made later. Appellant relies principally upon two cases: In *State v. Woods*, 49 Kan. 237, 30 Pac. 520, prosecution was for statutory rape. There the jury was impelled to return a verdict of guilty because a juror made statements of personal knowledge concerning the age of the girl. The conviction or acquittal depended on the girl's age. This court held the statement may have influenced the jury and reversed the judgment of conviction. In *State v. Stuart*, 129 Kan. 588, 283 Pac. 630, the syllabus reads:

"A statement by a juror to his fellow jurors of material matters outside the evidence in the case which is prejudicial in character, and as of his own personal knowledge, is misconduct which will vitiate a verdict unless a clear showing is made that no prejudice resulted from the misconduct." (Syl. ¶ 1.)

In the opinion, however, it is recognized that all volunteer statements of jurors do not compel granting of a new trial, for it is stated:

"It is obvious that the extraneous statements brought before the jury by Gearhart as matters within his personal knowledge were prejudicial in character and naturally would have an effect upon the minds of the jury. It was the duty of the jury to make its findings upon evidence regularly introduced upon the trial and not upon the personal knowledge of jurors. A statement of

fact by a juror to his fellow jurors of his personal knowledge of facts involved in the case but not in the evidence, is misconduct. Of course not every act of misconduct is ground for granting a new trial. If it be trivial, or not such as to influence the jury, the misconduct will not vitiate a verdict. If facts outside of the evidence are brought before the jury as of the personal knowledge of a juror and they are likely to have influenced the mind of other jurors, the verdict should be set aside. *State v. McCormick,* 57 Kan. 440, 46 Pac. 777; *State v. Burton,* 65 Kan. 704, 70 Pac. 640; *State v. Lowe,* 67 Kan. 183, 72 Pac. 524; *State v. Duncan,* 70 Kan. 883, 78 Pac. 427.)" (p. 589.)

In the above opinion no reference was made to *State v. O'Keefe,* 125 Kan. 142, 263 Pac. 1052, where the third paragraph of the syllabus recites:

"While the jury was deliberating, one of the jurors made a statement purporting to be on his personal knowledge, and which was not based on the evidence. *Held,* considering the nature of the statement and the facts concerning it, as stated in the opinion, not to require or to justify the granting of a new trial."

And where, in the opinion, it was said:

"On the hearing of the motion for a new trial the affidavits of five jurors were filed concerning matters that transpired in the jury room. It is upon these affidavits that appellant relies on the point here raised. The affidavits attempted to state what caused some of the jurors, and especially juror Graham, to agree to a verdict of guilty. On this point the affidavits were not proper to be considered by the court, and perhaps were not considered. It is well settled that a juror cannot be heard to impeach his verdict by saying that he agreed to it upon consideration of matters other than the evidence and the instructions of the court. (16 C. J. 1236; *State v. Taylor,* 90 Kan. 438, 133 Pac. 861; *State v. Dreiling,* 95 Kan. 241, 147 Pac. 1108; *State v. Johnson,* 99 Kan. 850, 163 Pac. 462.) See, also, *State v. Farrar,* 103 Kan. 774, 176 Pac. 987, where earlier cases are discussed. Later cases are *State v. Luft,* 104 Kan. 353, 179 Pac. 553, and *State v. Shoemaker,* 112 Kan. 805, 212 Pac. 890." (p. 144.)

Later cases bearing on the subject are *State v. Kearney,* 130 Kan. 474, 287 Pac. 261, and *State v. Casebier,* 130 Kan. 762, 288 Pac. 736.

An examination of the record discloses'that defendant and Jackson had been in business together, had failed, and that defendant had purchased the assets from a receiver for their business. Wharry was a witness both for the state and for the defendant. He testified he knew defendant prior to the time he had occupied defendant's garage; that prior thereto he had been arrested for receiving stolen property, a fact known to defendant, and that shortly after he went to the garage they made arrangements for receiving stolen cars, reconditioning them and selling them. Defendant on cross-examina-

tion admitted he knew Wharry and that he had been accused of stealing automobiles before he and Wharry were associated together. We need not review the evidence of other witnesses that that is what was done, nor the evidence that Boller received the proceeds from such transactions. Even had the affidavits been formally received in evidence, the statements of what certain of the jurors said went little beyond what the testimony at the trial showed; that those statements likely influenced the minds of other jurors as to what the verdict should be has not been made to appear.

On the proposition that juror Adamson was coerced, it may first be stated that in his own affidavit he says he denied the charge. His affidavit then reiterates the statements about Boller's and Wharry's acquaintance, and about Boller and Jackson being a crooked outfit, and concludes:

"There never was enough evidence in my opinion to justify a vote of guilty. If it had not been for this threat, I never would have."

The fact remains, he stated to the contrary when the jury was polled. Even though the trial court may have thought the effect of the whole affidavit was simply an attempt to impeach a verdict, and it was therefore inadmissible, yet it did indicate knowledge of the contents of the affidavit. Under the circumstances, it must be held the trial court concluded that when the jury was polled defendant did not believe he had been coerced as he later stated he was (State·v. Kearney, 130 Kan. 474, 287 Pac. 261) and that he was attempting to impeach the verdict to which he had agreed.

It may be here noted that at the trial it was admitted by the defendant that each of the cars mentioned in the information was a stolen car. The sole question was whether defendant knowingly bought and later sold the car mentioned in the particular count under which he was convicted. The jury concluded he did. While defendant succeeded in getting some of the jurors to sign affidavits of an impeaching character, he failed to convince the trial court he did not have a fair trial. Our examination of the record as abstracted fails to disclose the substantial rights of the defendant were affected by any of the matters complained of, and the judgment of the lower court is affirmed.