No. 44,261

THE STATE OF KANSAS, *Appellee*, v. RONNIE DEAN JORGENSON, *Appellant.*

(408 P. 2d 683)

Opinion filed December 11, 1965.

*Rowland Edwards,* of Waterville, argued the cause and was on the brief for the appellant.

*Floyd Sorrick, Jr.,* county attorney, argued the cause, and *Robert C. Londerholm,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: Appellant claims error in the failure to give certain requested instructions to the jury which convicted him of the offense of burglary in the third degree under K. S. A. 21-521.

At the trial the prosecution evidence developed the following: Appellant was an employee for a custom combine operator in October, 1964, cutting milo. On October 21, 22, and 23 he drove a combine at the farm of Archie Taylor, Mr. Taylor hauling the grain with a tractor. On those three days appellant ate his noon meal in the Taylor home, about one mile from Mahaska in Washington County. At quitting time the evening of Thursday, October 22, Mr. Taylor asked him to stop by the Taylor home on appellant's way to town to ask Mrs. Taylor to drive the car to where Taylor was storing milo so he would not have to drive the tractor back. Appellant delivered the message to Mrs. Taylor who thereafter left home to pick up her husband as requested, closing but not locking the doors to the house. The following Sunday the Taylors noticed that their son's .22 caliber rifle, customarily kept behind a door in the back hall, was missing. Suspecting appellant, Mr. Taylor

caused a search warrant to be issued as a result of which the sheriff of Washington County found the missing rifle in the trunk of appellant's car. Appellant answered questions and signed a statement written by the county attorney, which included the following:

"That on October 21, 1964, I went to the home of Archie Taylor and walked in the back door and took the gun from behind the back door. I got in the pickup and drove back to Haddam where I put the gun in my own car. The gun was a Remington bolt action Rifle, with peep sight and carrying sling. When I approached the door of the Archie Taylor house the door and screen were both closed and I opened them both to get into the house."

Appellant testified as a witness in his own behalf substantially as follows: That on the three days he was cutting milo for Mr. Taylor he ate his noon meals in the Taylor home; that about quitting time he delivered Mr. Taylor's message to Mrs. Taylor that she was to pick him up at the state line; immediately after delivering this message at the Taylor house he drove a pickup to Mahuska for a bottle of pop; that he had a pair of goggles which he wore to keep the dust out of his eyes; he had evidently misplaced the goggles and had worked without them that afternoon and had two sore eyes; that he went back to the Taylor place thinking they might have fallen out of the pickup when he was at the Taylor place, but they were not there so he went in to the house to see if they were there; he knocked on the door first but did not think there was anyone at home as the car was not there; he went through the screen door on the back porch, pushing in a button to open the door; he looked for the goggles but did not see them where he thought they might be, on top of the egg case where he laid his hat with the goggles; he never did find the goggles. He further testified:

"Q. Well, now, where was this gun?

"A. Behind the door that you come through, come through on the back porch.

"Q. There where you left your hat and coat, in the same room?

"A. It's in the same room about five feet away.

"Q. Had you noticed that gun before?

"A. I'd seen it sitting there, shotgun sitting there beside it.

"Q. Did you have any intention when you went in there to take that gun when you went in.

"A. No.

"Q. When did you get the idea of taking the gun?

"A. I don't know.

"Q. Did you pick it up and look at it?

"A. Yes.

"Q. You didn't put it back then?
"A. No. Took it.
"Q. Then what did you do with it?
"A. Put it in the pick-up. Started the pick-up and backed out to the road and took off."

Appellant also testified he did not mention the missing goggles to Mrs. Taylor when he delivered the message to her and did not say anything to anybody about them prior to the trial.

Initially appellant was charged with both burglary and larceny of the rifle in connection with the burglary but at the close of all the testimony the charge of larceny was dismissed upon application of the appellee.

Appellant requested the giving of the following two instructions:

"No. ____

"The jury are instructed that an essential and indispensable element of the crime of burglary is intent. In order for a defendant charged with burglary to be found guilty, it must be established not only that he entered a dwelling, but that at the very time of entering he had the intention to commit a felony or larceny therein. If he did not have such intention at the time of entering, but entered with a peaceable and lawful intention and for a lawful purpose, and then afterwards, while inside the dwelling, conceived the intention of stealing and did steal, he would be guilty of larceny but he would not be guilty of burglary. Therefore, if the defendant in this case did not have the intention of committing a theft when he entered the house, but formed the intent for the first time after he was inside, he would not be guilty of burglary, as charged in the first count of the information, and unless you find from the evidence beyond a reasonable doubt that the defendant did have such intent when he entered the house, your verdict on the charge of burglary should be not guilty.

"If the court denies the above requested instructions as framed, then the defendant requests the court to give the instruction in substance.

"No. ____

"The jury are instructed that if the defendant, Ronnie Dean Jorgenson, entered the house of Archie Taylor with the intention and for the purpose of seeing if his goggles were there where he thought he might have left them, and did not have any intention at the time of entering the house of stealing anything, and then, after he was in the house, he saw the gun and formed the intention of taking it and did take it and carry it away with him, he would be guilty of larceny, but he would not be guilty of burglary, because an essential element of the crime of burglary is the intention to commit a larceny or other felony at the very time of the entry so if the intent is formed afterwards the entry would not constitute burglary. Therefore, the State in this case on the charge of burglary must show to your satisfaction from the evidence not only that the defendant, Ronnie Dean Jorgenson entered the house and took the gun, but that he entered with the intention of taking the gun, had that intention in his mind when he entered and did not form it after-

wards, and unless the evidence establishes such intention beyond a reasonable doubt, your verdict on the charge of burglary should be not guilty.

"If the court denies the above requested instruction in the language in which it is framed, the defendant requests the court to instruct the jury on the legal principle involved in said instruction, and to give such instruction in substance."

The court declined to give appellant's requested instructions on the theory the matter was covered in the instructions given. It gave stock instructions of a general nature, and on the particular point at issue instructed the jury as follows:

"2.

"In order to find defendant guilty of the offenses of third degree burglary as charged against him in the first offense or Count No. 1 of the information, it will be necessary the following facts be established in the minds of the jurors beyond a reasonable doubt, to-wit:

"1. That defendant did enter the home of Archie Taylor;

"2. That he so entered in the daytime;

"3. That the building or home of Archie Taylor contained goods, wares, household goods and other valuable things;

"4. That defendant entered said building with the intent to steal, take and carry away goods, wares, merchandise, household goods and other valuable things;

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"3.

"If you find the elements set out in Instruction No. 2 have been proved to your satisfaction beyond a reasonable doubt, your verdict should be guilty of burglary in the third degree as charged in Count No. 1 of the information.

"Conversely, if you find the State has not proved each and every element contained in said Instruction No. 2 to your satisfaction beyond a reasonable doubt, then you shall return a verdict of not guilty as to Count No. 1 of the information."

The instructions given included a general one as to what might be considered in determining intent.

Appellant was found guilty of burglary in the third degree. Thereafter he moved for a new trial, stating among other things, trial error in the instructions. His motion was overruled and he now urges as error the court's failure to give his requested instructions or the substance thereof, and the failure to grant a new trial.

Appellant concedes the correctness of the instructions given but in effect says they were inadequate in presenting his theory of the case.

The rule is well established that error cannot be predicated on the refusal to give certain instructions where those which are given cover and include the substance of those which are refused

(See cases cited at 2 Hatcher's Kansas Digest, rev. ed., Criminal Law, § 306; 4 West's Kansas Digest, Criminal Law, § 829).

Thus, the precise point at issue is whether the jury was adequately advised on the issue of the intent of appellant at the time he entered the Taylor home, an intent to commit a larceny therein being an essential element of the offense of burglary. We think the jury was adequately and properly advised as to the requisite intent and as to appellant's position thereto. Instruction No. 2, subsection 4, above-quoted, plainly and specifically stated that, "In order to find defendant guilty" it would be necessary to find beyond a reasonable doubt that *"defendant entered said building with the intent to steal. . . ."* (Our emphasis.)

Instruction No. 3 restated the general necessity as to finding of the truth of the various elements constituting the offense of burglary before a verdict of guilty could be returned, and it concluded with the converse of the proposition, specifically directing the jury to return a verdict of not guilty if it found the state had not proved *each and every element* contained in instruction No. 2 to its satisfaction beyond a reasonable doubt.

The word "intent" as used in the instructions was not used in any technical sense nor in any way different from its ordinary use in common parlance. There was nothing particularly technical or complex about the issue presented to the jury from either a legal or a practical standpoint. Appellant claimed an innocent intent in entering the home—appellee claimed otherwise. We think the instructions, not otherwise objected to, embodied appellant's defense and presented the issue squarely and fairly to the jury. We do not say it would have been improper for the court to have given the substance of one of appellant's requested instructions but at the same time we cannot say it was prejudicial error for the court to fail to do so in view of the other instructions given. We do note that in the closing argument to the jury appellant's counsel dwelt at length upon the issue of appellant's intent, stressing repeatedly that appellant entered the house not with an intent to steal but with intent to look for his missing goggles and that therefore he could not be guilty of burglary under the court's instructions. We do not think the jury was misled or that it misunderstood as to the point at issue or that appellant suffered any prejudice in the failure to give the requested instructions. Therefore the actions of the trial court are affirmed.

APPROVED BY THE COURT.