No. 46,971

STATE OF KANSAS, *Appellee* v. CHARLES TAYLOR, *Appellant.*

(512 P. 2d 449)

Opinion filed July 14, 1973.

*John C. Humpage,* of Topeka, argued the cause and was on the brief for the appellant.

*Max M. Hinkle,* county attorney, argued the cause, and *Vern Miller,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: This is a direct appeal by Charles Taylor from a jury conviction of grand larceny by embezzlement in violation of K. S. A. 21-548 and from a sentence under K. S. A. 21-534 (3) to the

custody of the Kansas State Director of Penal Institutions for an indeterminate term of imprisonment not to exceed five years.

The case arose from the disappearance of a color television set and two towels from the White House Inn in Abilene in October, 1969. The evidence adduced at trial was sketchy and circumstantial. The state presented only two witnesses, Robert Schenk, the owner and manager of the motel, and JoAnne Johnson, a girl friend of appellant. The state's evidence was that appellant registered at the motel around 2:00 p. m. on Sunday, October 12, 1969, and was given room number 37. Appellant stated he planned to stay two or three days. Owner Schenk believed appellant was alone. Appellant used a false name, gave a false address in Rhode Island, claimed a fictitious employer and listed an out-of-state car license plate. Owner Schenk became aware of the subterfuge when he discovered a Riley County license plate and a Fort Riley registration sticker on the vehicle appellant was driving. Schenk could see Room 37 from the motel office. He observed appellant enter and leave the room several times during the afternoon and during one of these absences, Schenk entered Room 37 and noticed that the television set had been moved from its normal position onto a luggage rack. Around 9:00 p. m., Schenk again checked the room and saw the television back in its proper position. Schenk went home for the evening around 11:30 p. m. When he returned the next morning at 9:30 a. m., he checked Room 37 and found the television set and towels missing. The covers of the bed had not been pulled down. Appellant had not checked out of the motel. The vehicle driven by appellant was owned by JoAnne Johnson who lived in Ogden. She had loaned the vehicle to appellant on October 12, for the stated purpose of permitting him to go to Topeka to see his attorney. Appellant called Ms. Johnson between 9:00 p. m. and 10:00 p. m., and Ms. Johnson told him to return the car the following morning. Appellant picked Ms. Johnson up around 7:00 a. m. on Monday morning and drove her to Manhattan for a dental appointment and then on to her place of employment. Appellant kept the car all day Monday, picked Ms. Johnson up after work and returned with her to Ogden. There, they were met by police and consented to a search of the car which disclosed nothing. Neither the television set nor the towels were ever found.

Appellant testified that he had gone to the motel with a girl named Kathy whom he had met that Sunday morning while "bar-

hopping" through Junction City, where he lived. Appellant stated that he fell asleep in the motel room in Abilene around 5:00 p. m. and awoke around 8:30 p. m. to find that Kathy had gone. He stated he did not have the room key when he left and drove back to Junction City. He stopped to see a friend, Gary Price, who accompanied him to a restaurant where appellant called Ms Johnson. Around 10:15 p. m. Price drove the car to Taylor's residence, locked the car and gave appellant the keys. Price testified to corroborate appellant's chronicle of activities between 9:00 p. m. and 10:15 p. m.

Appellant was charged with and convicted of violating K. S. A. 21-548, which prior to its repeal July 1, 1970, defined an offense as follows:

"If any tenant or lodger shall take away, with intent to embezzle, steal or purloin, any bedding, furniture, goods, or chattels or fixture, which by contract was let to him to be used by him in or with any house, apartment, room or lodging, whether the contract for letting shall have been made by such person or by any person on his behalf, *he shall be adjudged guilty of larceny*, and punished in the same manner prescribed by law for stealing property of the value of the articles so stolen, purloined or embezzled." (Emphasis added.)

Appellant's statement of sixteen points on appeal has been consolidated into five separate arguments in his brief. We will address ourselves to these five points.

Appellant first claims the trial court lacked jurisdiction to accept the jury verdict because the jury found appellant guilty of an offense with which he was not charged. A conviction upon a charge not made in the information is a clear denial of due process. *(State v. Minor,* 197 Kan. 296, 416 P. 2d 724.)

The jury in its verdict found appellant "guilty of grand larceny as charged in the information." The information charged in the statutory language of K. S. A. 21-548 that appellant did "unlawfully, feloniously and willfully, take away, with intent to embezzle and steal, one television set and two hand towels . . ." The trial court in its instruction No. 3 informed the jury, without objection, that appellant was "charged with the crime of grand larceny by embezzlement" and listed the necessary elements of the offense.

Appellant points out that this court has recognized the offenses of larceny and embezzlement are distinct crimes with different elements. (See *State v. James,* 157 Kan. 703, 143 P. 2d 642 and *State v. Piper,* 206 Kan. 190, 477 P. 2d 940.) He then argues that K. S. A. 21-548 is an embezzlement statute and that the jury verdict finding

appellant guilty of larceny was not responsive to the charge. In *State v. Piper*, supra, the court held that K. S. A. 21-547 defining embezzlement by a bailee should be considered an embezzlement rather than larceny statute despite the fact that 21-547 contained the same language as does 21-548 that "he shall upon conviction be adjudged guilty of larceny." The felonious intent required by 21-547 is an "intent to embezzle or convert to his own use" whereas 21-548 requires an "intent to embezzle, steal or purloin." Because 21-548 specifically refers to an intent to *steal* it might be distinguished from 21-547 and denominated a larceny statute. Such fine distinctions aside, appellant's argument overlooks the fact that regardless of whether K. S. A. 21-548 be generically described as an embezzlement statute or a larceny statute, the jury acted precisely as the statute commands. Having found the statutory elements of the crime were proven, the jury adjudged appellant guilty of larceny as directed in K. S. A. 21-548.

Further, the jury found appellant "guilty of grand larceny *as charged in the information.*" The information contained only one count. This court has said that a verdict may be upheld when it simply states the defendant is found guilty as charged in the information, any surplus verbiage may be disregarded. In *State v. Whiting*, 173 Kan. 711, 252 P. 2d 884, the defendant argued that the verdict was not responsive to the offense charged. This court rejected the argument as follows:

The verdict found the defendant guilty of lewd conduct, 'all in the manner and form charged in the first count of the complaint.' The words of the charge were that 'defendant was . . . guilty of lascivious behavior.' The point made by defendant is that the statute says 'lewdness or lascivious behavior' while the verdict said 'lewd conduct.' He argues therefore that the verdict did not convict him of the offense charged. The verdict did find him guilty as charged in the first count. The difference between 'lascivious behavior' and 'lewd conduct' is too fine a distinction. At any rate, there was only one offense charged on this phase of the case: Actually the words 'lewd conduct' in the verdict were surplusage. The verdict would have been good if it had simply found the defendant guilty as charged in the first count of the complaint." (p. 715)

Similarly, in *In re Lester*, 128 Kan. 784, 280 Pac. 758, the petitioner contended the verdict of the jury was void because it found him guilty of an offense different from that with which he was charged. The court held:

"Where the information charges the defendant with having purchased and received stolen property knowing the same to have been stolen, and contains no reference to the property having been stolen in the nighttime, and the

verdict of the jury finds the defendant guilty of buying and receiving property that he knew had been stolen 'in the nighttime as charged in the first count of the information,' the words 'in the nighttime' are mere surplusage and can be eliminated and wholly disregarded without affecting the validity of the verdict. The concluding clause, 'as charged in the first count of the information,' makes the crime definite and specific by direct reference." (Syl. ¶ 1)

Likewise in the present case, the concluding clause "as charged in the information" makes the crime definite and specific by direct reference. A verdict can be properly interpreted by reference to the information, to the court's instructions and to the record; surplusage may be disregarded when the jury's verdict is otherwise responsive to the charge. (*In re McLean,* 84 Kan. 852, Syl. ¶ 3, 115 Pac. 647; *Hodison v. Rogers,* 137 Kan. 950, Syl. ¶ 1, 22 P. 2d 491, 88 A. L. R. 1080; *State v. Doolittle,* 153 Kan. 608, Syl. ¶ 1, 113 P. 2d 94.) Considering the statute, the information and the court's instructions, it is clear in this case the jury's verdict was responsive to the single charge contained in the information.

Appellant next contends the trial court erred in refusing to give his requested instructions No. 2 and 6 relating to the presumption of innocence, the burden of proof and the definition of reasonable doubt. The court gave an instruction on these matters which is verbatim PIK Criminal 52.02. It reads as follows:

"The law places the burden of proof upon the State to prove that the defendant is guilty. The law does not require the defendant to prove his innocence. Accordingly, you must assume that the defendant is innocent unless you are convinced from all of the evidence in the case that he is guilty.

"You should evaluate the evidence admitted in this case and determine the innocence or guilt of the defendant entirely in accordance with these instructions. The test you must use is this: If you have a reasonable doubt as to the truth of any of the claims made by the State, you should find the defendant not guilty. If you have no reasonable doubt as to the truth of any of them, you should find the defendant guilty."

The court also instructed as part of its instruction No. 6 that "you should not find the defendant guilty unless the facts and circumstances proved exclude every reasonable theory of innocence."

This court has frequently held that error cannot be predicated on the refusal to give certain instructions if those given cover and include the substance of those which are refused. (*State v. Jorgenson,* 195 Kan. 683, Syl. ¶ 1, 408 P. 2d 683; *State v. Finley,* 208 Kan. 49, 56, 490 P. 2d 630; *State v. Osburn,* 211 Kan. 248, 254, 505 P. 2d 742.)

In *State v. Larkin,* 209 Kan. 660, 498 P. 2d 37, error was claimed in the refusal to give the identical five instructions requested in this case. In *Larkin,* as here, the trial court gave a more abbreviated instruction. This court found no error and stated:

"Appellant complains that, although requested to do so, the trial court failed to define the phrase 'reasonable doubt' as used in its instruction to the jury. We cannot say the trial court erred in this omission. We have on occasion approved particular instructions defining the words 'reasonable doubt'; however, it may well be questioned whether any definition is more illuminating than the phrase itself. The words are ordinary ones meant to be used in their popular or conventional sense and are understandable by a person of ordinary intelligence. Long ago, in *State v. Bridges,* 29 Kan. 138, this court stated:

" ' "[I]t has often been said by courts of the highest standing, that perhaps no definition or explanation can make any clearer what is meant by the phrase 'reasonable doubt' than that which is imparted by the words themselves." ' (p. 141.)

"And in *State v. Davis,* 48 Kan. 1, 28 Pac. 1092, we find this:

" 'It is to be presumed that the jury understood what the words "reasonable doubt" meant. The idea intended to be expressed by these words can scarcely be expressed so truly or so clearly by any other words in the English language.' (pp. 10-11)

"See, also, 88 CJS, Trial, § 318, PIK 52.04, Criminal, p. 49.

"Appellant further complains of language used in other instructions given the jury respecting the presumption of innocence to be afforded one on trial, . . . We have examined the challenged instructions and find nothing in them approaching reversible error." (p. 622)

Appellant complains, however, that the trial court's instruction and PIK Criminal 52.02 do not use the phrase "presumption of innocence" but rather instruct the jury to "assume that the defendent is innocent." He claims the use of the term "assume" is not sufficient to inform the jury of the presumption of innocence.

Black's Law Dictionary (Rev. 4th Ed.) defines the term assumption as "The act of conceding or taking for granted. . . . The term is substantially synonymous with 'inference,' 'probability,' and 'presumption,' " It is unclear from the PIK committee commentary to PIK Criminal 52.02 why the term "assume" was employed rather than the more familiar characterization of "presumption." Nevertheless, the terms are substantially synonymous. The instructions, taken as a whole, clearly set forth the presumption of innocence and the burden upon the state to prove guilt beyond a reasonable doubt.

Appellant next claims error in the denial of his motion for a mistrial, filed after the jury returned and the court approved the verdict, on the basis of testimony given by one of the jurors, Mrs.

Mary Londeen. The record does not contain an abstract of Mrs. Londeen's testimony. The only indication of its substance is the summary thereof contained in the motion for mistrial. It may thus be that consideration of this point should be foreclosed by appellant's failure to bring up a record adequate to review his contention. See *e. g., Noll v. Schnebly,* 196 Kan. 485, 413 P. 2d 78; Supreme Court Rules 6 (*a*), 209 Kan. xxii.

Assuming the record is sufficient to present the question it lacks merit. The motion for mistrial states that the verdict was rendered at 11:57 a. m. on June 23, 1971. The jury was polled and all agreed it was an unanimous verdict. At 1:30 p. m. Mrs. Londeen appeared to testify before the court. She stated that she had voted for the guilty verdict and had answered in the affirmative when the jury was polled. However, after the jury was discharged she stated "I wasn't correct, I was not right." She apparently testified that her fellow jurors persuaded her to vote guilty but that she knew she was wrong. She stated the other jurors told her that she could judge solely on circumstantial evidence and that the court's instructions allowed for conviction on circumstantial evidence. At the hearing on the motion for mistrial the court's instruction No. 6 on this subject (PIK Criminal 52.16) was read to the juror and she then stated the verdict was not hers. Appellant claims on the basis of this testimony, a mistrial should have been declared.

The testimony of Mrs. Londeen was inadmissible to impeach the verdict. In *State v. Blocker,* 211 Kan. 185, 196, 505 P. 2d 1099, the court most recently discussed the availability of testimony by a juror to impeach a verdict:

"We have long adhered to the rule that a juror may not impeach his verdict on a ground inhering in the verdict itself; he may not divulge what considerations influenced him in arriving at his verdict or the reasoning on which he based his decision. (*State v. Buseman,* 124 Kan. 496, 260 Pac. 641; *State v. Boller,* 147 Kan. 651, 77 P. 2d 950.) Our case law to such effect has been codified in K. S. A. 60-441, which recites:

" 'Upon an inquiry as to the validity of a verdict or an indictment no evidence shall be received to show the effect of any statement, conduct, event or condition upon the mind of a juror as influencing him to assent to or dissent from the verdict or indictment or concerning the mental processes by which it was determined.'

"In *Kincaid v. Wade,* 196 Kan. 174, 410 P. 2d 333, we said that the statute clarified but did not change existing law. . . .

"On the other hand, evidence as to extraneous matters such as misconduct or physical facts or occurrences, either within or without the courtroom, is admissible if material to the issues being determined. (K. S. A. 60-444; *Kin-*

*caid v. Wade,* supra; *State v. Schroeder,* 201 Kan. 811, 822, 443 P. 2d 284.)
. . ."

(To the same effect, see *Ingram v. State,* 204 Kan. 836, 465 P. 2d 925; *State v. Morgan,* 207 Kan. 581, 485 P. 2d 1371.)

Here, Mrs. Londeen's testimony did not relate to extrinsic misconduct or to physical facts or occurrences within or without the courtroom but only to the reasons she joined in the verdict. Mrs. Londeen stated she did not personally have an opportunity to view instruction No. 6. She also stated, however, that the other jury members' actions were not unfair or duressive. She did not suggest the other jurors prevented her from seeing the instructions. In its memorandum of decision overruling the motion for mistrial the court noted that "both the state's attorney and the court inquired at length regarding any undue pressure, duress, or impropriety during jury deliberations. None was disclosed or even implied by the juror." She heard the instructions read to the jury in open court and the other jurors told her about the instruction. She does not deny she acquiesced in the guilty verdict. As an afterthought she simply decided she was wrong. The mere fact that a juror who joins in a verdict later professes to believe the defendant innocent is no basis for ordering a mistrial. (*Ingram v. State,* supra.)

Appellant next contends he should have been discharged because the original complaint filed in the county court upon which an arrest warrant was issued was constitutionally deficient in that it was conclusory in nature, was cast in the language of the statute and afforded no basis for a magistrate to find probable cause.

An identical argument was made in *State v. Kearns,* 211 Kan. 158, 505 P. 2d 676. The court's answer there is applicable here:

". . . Whatever its deficiencies, the complaint had spent its force when a preliminary hearing was held and the magistrate made the necessary findings to bind appellant over for trial. For a full discussion of this proposition see *State v. Addington,* 205 Kan. 640, 643-5, 472 P. 2d 225. The district court had jurisdiction to try the appellant and correctly overruled his motion to discharge." (p. 162.)

Appellant's argument is premised upon the holding in *Giordenello v. United States,* 357 U. S. 480, 2 L. Ed 2d 1503, 78 S. Ct. 1245, suppressing evidence seized as a result of an arrest pursuant to a warrant issued upon the basis of a defective complaint. This court has twice found *Giordenello* inapplicable to a case of this type. (See *State v. Addington,* 205 Kan. 640, 644, 472 P. 2d 255 and *State v. Theus,* 207 Kan. 571, 578, 485 P. 2d 1327.) Unless a defendant's

substantial rights are prejudiced as a direct result of an unlawful arrest, his arrest will not deprive a court of jurisdiction or vitiate a subsequent conviction. (*State v. Addington,* supra; *State v. Theus,* supra.)

Appellant's final contention is that his motions for acquittal should have been granted because there was insufficient evidence to support a verdict of guilty. This argument is first premised upon the assertion there was no direct evidence that the television set was removed from the room without authorization. Want of authorization for the taking is not a listed element of the offense created by K. S. A. 21-548. In any event, the motel owner Schenck testified against appellant. He testified that he purchased the color television set less than a year before its disappearance and that the television was removed from the room during appellant's occupancy. This would be sufficient to establish an inference that the taking of the television set was unauthorized under the principles set forth in *State v. Aten,* 203 Kan. 920, 457 P. 2d 89; *State v. Larkin,* supra; and *State v. Cory,* 211 Kan. 528, 506 P. 2d 1115.

Appellant also claims there was insufficient evidence to support a finding the television set was feloniously taken by him. This question presents a more perplexing problem. The state's proof of appellant's guilt rested solely upon circumstantial evidence connected with appellant's occupancy. There was no direct evidence that appellant was within the motel room at any time after Schenck last saw the television set and before the next morning when he found it missing. The television set was not found. It was never seen in appellant's possession while he was away from the premises.

A conviction must be grounded on something more than probabilities, possibilities or suspicious of guilt. (*State v. Doyle,* 201 Kan. 469, Sly. ¶ 9, 441 P. 2d 846.) In a case involving circumstantial evidence, it is the duty of this court on appeal to determine whether there is a basis in the evidence for a reasonable inference of guilt. (*State v. Doyle,* supra, Syl. ¶ 7.) This court has often said the verdict of a jury with the approval of the district court should not be reversed if such reversal must be based upon the view this court takes of the relevant weight of conflicting evidence. Presumptions and inferences may be drawn by the jury only from facts established, and presumption may not rest upon presumption or inference on inference, and the rule is doubly applicable in criminal cases. (*State v. Doyle,* supra, Syl. ¶ 8; *State v. Wall,* 206 Kan. 760, 482 P. 2d 41.)

In determining the sufficiency of the evidence, this court looks only to evidence favorable to the decision, and if the essential elements of the charge are sustained by any legally admitted evidence, the conviction stands. (*State v. Scott*, 199 Kan. 203, 428 P. 2d 458; *State v. Johnson*, 210 Kan. 288, 502 P. 2d 802.)

The question for the jury seems a close one. Accepting as true the testimony of the motel owner the following facts may be considered proven. Appellant checked into the motel alone at 2:00 o'clock in the afternoon giving a false name, address and license number. (He lived in the neighboring town of Junction City, a short distance from Abilene.) A colored television set owned by the motel was present in appellant's room at that time and was moved from one place to another during the afternoon while appellant occupied the motel room. Appellant left the motel in his vehicle and returned several times between 2:00 and 9:00 o'clock p. m. The television set was in the room when the owner left the motel that evening. It was not in the room when he returned the next morning. Appellant did not check out of the motel during the owner's absence.

From appellant's evidence the jury might have found appellant's purpose in renting the room was to facilitate a lover's tryst with the elusive Kathy, last name unknown, whom he said he met in a bar in Junction City. Such a purpose might have explained his use of a false name, address and license number. However, neither the motel proprietor nor his friend Price could corroborate the presence of Kathy at the motel. Assuming she was with the appellant, there was no evidence as to why she left the motel room surreptitiously without transportation, and in a different town than where the "pickup" occurred.

From the state's evidence the jury might well infer there was no Kathy and that appellant's use of the fictitious identification was to facilitate a theft of the television set. The set was present in his room when he checked in and it disappeared sometime before he checked out of the motel. Although the set was in the motel room when the proprietor went home that evening, it might be inferred that appellant returned to the motel thereafter and stole the television set during the early morning hours. Absent the fictitious identification given while registering in at the motel, indicating an unlawful or criminal intent in renting the motel room, the remaining evidence might be insufficient to support a verdict of guilt.

After carefully reviewing the evidence which would support the verdict there appears to be a basis in the evidence for a reasonable inference of guilt. The relevant weight of the conflicting evidence must be left to the jury.

The judgment is affirmed.