No. 48,922

STATE OF KANSAS, *Appellee,* v. CRAIG NORTON GLAZER, *Appellant.*

(574 P.2d 942)

Opinion filed January 21, 1978.

*Randolph G. Austin* and *J. Roy Holliday, Jr.,* both of Hackler, Londerholm, Speer, Vader & Austin, of Olathe, argued the cause and were on the brief for the appellant.

*Richard S. Wetzler,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Dennis W. Moore,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Craig Norton Glazer, special narcotics agent for the attorney general, was convicted by a jury of conspiracy to commit the crime of delivery of cocaine. This charge was filed under K.S.A. 21-3302, K.S.A. 1976 Supp. 65-4107 and K.S.A. 1976 Supp. 65-4127a. The first statute defines and makes conspiracy to commit a felony a crime. The second statute lists certain controlled substances including cocaine. The third statute makes it a felony for a person to deliver any controlled substance, such as cocaine, unless that person is currently registered with the State Board of Pharmacy or is exempt from registration and liability under K.S.A. 65-4116(c) and (d), or K.S.A. 65-4136.

At the trial Glazer's defense rested upon the exemption from liability recognized in K.S.A. 65-4136(c) of the Uniform Controlled Substances Act which reads:

"[N]o liability is imposed by this act upon any authorized state, county or municipal officer engaged in the lawful performance of his duties."

The 354 page record on appeal sets forth an interesting story of intrigue having to do with the illicit drug business and the participation of a narcotics agent in that illicit business. The defendant insists he was acting as an authorized state officer engaged in the lawful performance of his duties. The state denies any such authorization and charges that his actions were unlawful and far exceeded any permissible bounds.

We will attempt to keep the facts as brief as possible. The three conspirators named in the information were Craig Norton Glazer, Donald Lee Woodbeck and Greg Houston. As previously pointed out Glazer was a narcotics agent operating out of the office of the attorney general. Woodbeck was a wholesale dealer in illicit drugs living in Phoenix, Arizona. His merchandise was purchased in South America. His distribution system covered several states including Kansas. Greg Houston was one of his distributors living in Arizona. Houston had contacts with persons in various states, including Kansas. These persons made up his distribution

system for the sale of illicit drugs to users. At the trial both Woodbeck and Houston testified for the state. From their testimony the following story unfolds.

In June, 1974, Glazer called Woodbeck and asked for his assistance in organizing a "big" narcotics arrest in Kansas. The two men had become close friends at a college in Arizona where Woodbeck had started his wholesale business in illicit drugs. Glazer advised Woodbeck that he was a narcotics agent for Vern Miller, the Attorney General of Kansas. Miller was running for the office of Governor of the State of Kansas and had promised the voters if he was elected a five-state agency would be organized to deal with the growing traffic in illicit drugs. The agency was to be funded by a federal grant. If Glazer could arrange an arrest involving a large sale of drugs he, Glazer, would receive recognition and a possible appointment as head of the five-state agency. The resulting publicity would enhance Miller's chances for election. In turn if Glazer received the appointment he would have access to information on undercover activities which when relayed to Woodbeck would be invaluable to Woodbeck in continuing his illicit business.

Glazer asked Woodbeck to bring a pound or two of cocaine to be used in setting up a sale in Kansas which would result in an arrest. The plan was to use half of the cocaine to frame two unsuspecting persons to be arrested for the sale. The remaining half of the cocaine would be sold to cover the price Woodbeck paid for the cocaine. Woodbeck was to find two local people to sell the narcotics to Glazer. After all the details had been arranged Glazer was to advise the attorney general's office and secure the presence of backup agents from the narcotics unit to take part in the final arrest and thus witness the "drug bust".

Woodbeck arrived in Kansas City with the cocaine. Glazer and Woodbeck conferred about their ambitious plan and began working out the details on or about June 17, 1974. Woodbeck had difficulty in obtaining the two "fall guys" who were to be arrested for the sale of the cocaine to Glazer. In addition Woodbeck needed someone to sell the other half of the narcotics. Woodbeck called his distributor, Houston, in Arizona who agreed to come to Kansas and assist in carrying out the scheme. After Houston arrived he learned that the arrest was to be "for real" and that those arrested would receive possible prison terms as a result of

the scheme. He refused to furnish any of his people to make the "buy" but did agree to assist Woodbeck by acting as a big drug dealer who wanted to sell the drugs.

Woodbeck and Houston enlisted the aid of two unsuspecting black gentlemen, ostensibly to act as "backup men" for Houston the "big dealer". They were to receive $500.00 each for accompanying Houston and Woodbeck to the place where the $14,000.00 sale of cocaine was to be consummated between Houston and Glazer. However, it was planned so that Houston at the last minute would be unable to accompany the two blacks and Woodbeck to the motel where the sale was to take place. The blacks were to take over and make the delivery to Glazer. Glazer would pay the $14,000.00 and the blacks were to take their $1,000.00 "off the top" and deliver the balance of $13,000.00 to Houston later. Woodbeck was posing as an underling of Houston. He would see to it that the blacks actually made the transfer of drugs to Glazer. It was planned between Woodbeck and Glazer that all the money and the drugs would be recovered at the time of the arrest.

The place of the purported sale was arranged at a motel in Kansas. The special agent in charge of the narcotics division of the attorney general's office was advised of the time and place. Various agents were stationed outside the motel and in adjoining rooms believing that Glazer was going to make a "buy" from a "big dealer".

At the appointed time Houston, Woodbeck and the two blacks got together. Houston placed the cocaine in a car belonging to one of the blacks and told them to get rid of the drugs. Houston said he was leaving to get something to eat and that the two blacks should bring the money to him later. They were to take charge because he, Houston, did not have much faith in Woodbeck.

When the two blacks and Woodbeck arrived at the motel Woodbeck got out of the car first, leaving the cocaine on the car seat, thinking the blacks would pick it up and bring it into the motel. However, the blacks did not react as expected. They called Woodbeck back to the car and he had to carry the drugs to the door of the motel room. The special agents waiting in the bushes knew that Woodbeck had been working with Glazer and thought it was odd that the blacks were not in possession of the drugs when they left the car and proceeded to the motel. At the door of

the motel Woodbeck handed the drugs to the blacks as they entered the motel room. Glazer was present in the room. A short negotiation as to the price to be paid followed. $14,000.00 was the price agreed upon. Glazer handed $7,000.00 to the blacks after he had examined the cocaine. Glazer then advised them he would get the balance of $7,000.00 from his car. He went out to his car, opened the trunk lid and then slammed the lid shut. This was the prearranged signal for the narcotics agents to move into the room and arrest the two blacks and Woodbeck. The arrest was made and the three were placed in handcuffs. Woodbeck was then taken from the room and released. The two blacks immediately began shouting that they had been framed. They were taken to jail.

This particular drug arrest then came under the scrutiny of the attorney general and his officers. Margaret Jordan, the district attorney of Johnson County, had previously complained to the attorney general about improper activities of his agents in making drug investigations and arrests in that county. Strong feelings had been engendered. In addition certain irregularities were observed by the officers who participated in this particular arrest. It appeared odd that Woodbeck who was assisting Glazer would have possession of $14,000.00 worth of cocaine and carry it to the motel before a sale had been completed. It appeared out of the ordinary for the two local blacks to be trusted with such a large quantity of drugs by a big Arizona dealer. For these and other reasons the attorney general began interrogating Woodbeck, Glazer and other special agents who had participated in the arrest. The foregoing facts came to light. The information obtained was made available to the Johnson County District Attorney and this and other prosecutions followed.

On appeal the defendant alleges that various trial errors occurred which deprived him of a fair trial. We have examined each of these alleged errors and find that defendant did have a fair trial. No reversible error has been shown. We will treat each of these alleged errors briefly.

Defendant suggests that the acts which form the basis for the present charge were committed by him as a narcotics officer carrying out his duties in an effort to detect and arrest those individuals who were violating the narcotics laws. It is argued that the trial court failed to properly instruct the jury as to the exemption from liability which he had under K.S.A. 65-4136(c)

while acting as an authorized state officer engaged in the lawful performance of his duties.

The court gave the following instruction:

"The defendant is charged with conspiring to violate K.S.A. 65-4127(a), 1973 Supp.

"K.S.A. 65-4127(a) provides: 'It shall be unlawful for any person to manufacture, possess, have under his control, possess with intent to sell, sell, prescribe, administer, deliver, distribute, dispense or compound any opiates, opium or narcotic drugs, except as authorized in (The Uniform Control Substances Act).'

"*You are further instructed that K.S.A. 65-4136(c) provides: 'No liability is imposed by (65-4127a) upon any authorized state, county or municipal officer engaged in the lawful performance of his duties.'*" (Emphasis supplied.)

The emphasized portion of this instruction covered the substance of the defense. See *State v. Taylor,* 212 Kan. 780, 784, 512 P.2d 449. It was for the jury to determine whether defendant, an authorized state officer, was engaged in the lawful performance of his duties when he sought the help of an out-of-state drug wholesaler and arranged to have illicit cocaine brought into the state so as to arrange a sham sale. There can be no doubt from the evidence that defendant conspired with Woodbeck to have the illicit drug brought into Kansas and have it delivered. Half of the drug was to be delivered and sold to finance the total scheme. The other half was to be used in framing the unsuspecting blacks by delivering the same to them before the arrest. The acts of the defendant far exceeded the authority of a narcotics officer. This was established by the testimony of the attorney general and the defendant's supervising officer. The evidence was sufficient to support the conviction. See *State v. Sagebiel,* 206 Kan. 482, 487-488, 480 P.2d 44; and *State v. Nading,* 214 Kan. 249, 255-256, 519 P.2d 714.

Some argument is made that the defendant acted as the purchaser of the drug and did not make a delivery. The defendant was neither charged nor convicted of delivery. He was charged and convicted of conspiracy to commit the crime of delivery.

Conspiracy as defined in K.S.A. 21-3302 consists of two essential elements: (1) An agreement between two or more persons to commit or assist in committing a crime, and (2) the commission by one or more of the conspirators of an overt act in furtherance of the object of the conspiracy. See *State v. Daugherty,* 221 Kan. 612, 562 P.2d 42. To prove a conspiracy to commit a crime it is not necessary that the ultimate crime intended be committed if both

the agreement and an overt act in furtherance of the object of the conspiracy is proven. See *State v. Roberts,* 223 Kan. 49, 574 P.2d 164. The evidence introduced was sufficient to support the conviction and the instruction in the words of the statute exempting an officer if he was acting in the lawful performance of his duties was sufficient to cover the defense.

Defendant alleges that he did not have a fair trial because of publicity released by Margaret Jordan, the district attorney. The matter was submitted to the trial court on a motion to dismiss the case for misconduct. The trial court reprimanded the district attorney and noted a possible violation of the code of professional responsibility, but found no prejudice as to the defendant's case and denied the motion. The record fails to disclose that a motion for change of venue was filed under K.S.A. 22-2616. Defendant has not affirmatively shown the conduct of the district attorney prejudicially affected his substantial rights. See *State v. Thomson,* 188 Kan. 171, 174, 360 P.2d 871. Generally unprofessional conduct of counsel before or during the trial of a case will not be sufficient to justify a new trial unless the opposing party is prejudiced so as to prevent a fair trial. See *Schoonover v. State,* 218 Kan. 377, 543 P.2d 881, cert. den. 424 U.S. 944, 47 L.Ed.2d 349, 96 S.Ct. 1412.

Defendant next complains of failure by the prosecution to advise defendant before trial of a change in the testimony of Woodbeck. In his original statement Woodbeck said that Houston brought the cocaine into Kansas. Later Woodbeck admitted this was not true. He testified at trial that he had brought the drug to Kansas. During the trial at the time this change in his testimony surfaced a motion to strike all of Woodbeck's testimony was requested as a sanction for failure to advise the defendant. A second motion to produce the taped statement covering the change in the testimony was filed. The court entered a production order pursuant to K.S.A. 22-3213. An overnight recess was granted to permit defense counsel to listen to the tape and prepare any further defense he desired. Defendant cites cases where evidence helpful to the defendants was suppressed until after trial. This is not our present case. Evidence not disclosed to the defendant before trial is not suppressed or withheld by the state if the defendant has personal knowledge thereof, or if the facts

become available to him during trial and he is not prejudiced in defending against these new facts. See *State v. Walker*, 221 Kan. 381, 383, 559 P.2d 381; and *State v. Rueckert*, 221 Kan. 727, 735-736, 561 P.2d 850.

Woodbeck and the defendant were coconspirators in the original plan and defendant knew who brought the drug into Kansas. There was no evidence of bad faith on the part of the prosecution. A continuance was granted, the prosecution brought out the change in the testimony of Woodbeck, and the defendant was given ample opportunity to re-examine all witnesses thereafter. A trial court is vested with wide discretion in imposing sanctions under K.S.A. 22-3212(7), and no abuse of discretion occurred in the present case.

Next the defendant objects to the lengthy information and the two bills of particulars filed pursuant to his motions. He cites inconsistencies in certain facts alleged as compared to the testimony of certain of the witnesses. Considering the lengthy recital of facts contained in these bills of particulars which included by reference the entire transcript of the preliminary hearing it is surprising there was not a greater variance. The inconsistencies pointed out are unimportant. The main purpose of limiting testimony during the trial to the facts set forth generally in the bill of particulars is to prevent a conviction on some other crime established by the evidence but not charged in the information. See *State v. Frames*, 213 Kan. 113, 515 P.2d 751; and *State v. Craven*, 215 Kan. 546, 527 P.2d 1003. On the present charge of conspiracy to deliver cocaine it made little difference which of the coconspirators brought the drug into Kansas. No variance of importance occurred in this case.

Defendant next argues prejudice from an improper comment of the prosecutor in closing argument. After reviewing the testimony of witnesses the prosecutor stated, " . . . Donald Woodbeck for one testified and I believe truthfully, . . ." It is argued that such a statement lends the personal credence of the prosecutor to the testimony of the witness. Assuming, without deciding, that the remark was improper, it was inadvertent and the jury was admonished to disregard the remark. It has not been established that defendant's rights were in any way prejudicially affected and the contention is without merit. See *State v. Bilby*, 194 Kan. 600, 603, 400 P.2d 1015; and *State v. Murrell*, 215 Kan. 10, 13, 523 P.2d 348.

Defendant next contends the court erred in refusing to grant discovery of certain records in the office of the attorney general. Under K.S.A. 22-3212(2) the court may order discovery of papers in possession of the prosecution "upon a showing of materiality to the case and that the request is reasonable." The request for production in the present case covered any and all drug case files in the attorney general's office in which Glazer and three other special agents had collectively or separately participated, plus all files in the attorney general's office where deception had been employed to obtain an arrest. In addition defendant requested all similar files and records from Johnson County. The request was made without establishing materiality and on the face of this request it was unreasonable in scope. See *State v. Brown,* 220 Kan. 684, 689, 556 P.2d 443. K.S.A. 22-3212 places in the trial court a broad discretion to require the prosecuting attorney to disclose to the defendant documents and other tangible objects which are or have been within the possession or control of the prosecution. In order to obtain such discovery the defendant has the burden of showing the materiality of the information and the reasonableness of the request. (*State v. Humphrey,* 217 Kan. 352, 537 P.2d 155.) There was no abuse of discretion by the trial court in denying the request.

The defendant argues he did not have a fair trial because he was unable to determine which agreement and which delivery of drugs was being charged against him. In reviewing the record we find that the information was amended during trial to insert June 17, 1974, as a definite date for the alleged conspiracy among Glazer and Woodbeck and others. It is apparent that the particular delivery contemplated by the conspiracy covered the delivery which was to be made resulting in the arrest of the two blacks. Surplusage in the information may be disregarded. We do not feel that defendant was prejudiced in his defense even though the information set forth many unessential facts.

Defendant quarrels with various instructions which the court submitted to the jury. It would serve no useful purpose to comment on each individual instruction. We have carefully reviewed the instructions given and they were sufficient to cover the issues in the case. The elements essential to establish the crime charged were adequately set forth. See *State v. Potts,* 205 Kan. 42, Syl. 2,

468 P.2d 74; and PIK Criminal 55.03. It is not necessary to define the phrase "reasonable doubt" as used in the court's instructions. See *State v. Taylor,* supra, p. 785. A proper instruction on "reasonable doubt" as applied to all kinds of evidence gives the jury an appropriate standard upon which to make a determination of guilt or innocence; to instruct further on the probative force of circumstantial evidence is to invite the confusion of semantics. (*State v. Wilkins,* 215 Kan. 145, 523 P.2d 728.) We note that the instructions recommended in PIK Criminal 52.02 on burden of proof, presumption of innocence and reasonable doubt were given. No error appears in the instructions given in this case.

It is contended the trial court erred in permitting testimony of other crimes and in not properly limiting the purpose for which such testimony could be considered by the jury. There was testimony by R. C. Bonds that Glazer and Woodbeck came to his home the week prior to June 24, 1976. Glazer was carrying a satchel. They asked Mr. Bonds if he knew of anyone who wanted to purchase some cocaine. Bonds was shown the content of the satchel which was a white powder. He consumed a small amount of the powder which was left behind by Woodbeck and Glazer. The substance he consumed tasted like cocaine.

The trial court ruled that the testimony concerned a possible offense which was sufficiently proximate in time and similar in nature to be admissible. The jury was admonished to consider the evidence only for the purpose of showing knowledge or intent on the part of the defendant pursuant to K.S.A. 60-455.

The defendant questions the probative value of the evidence and its relevancy. Intent was an important issue in this case and the evidence was admissible under the test set forth in *State v. Faulkner,* 220 Kan. 153, Syl. 1, 551 P.2d 1247, and prior cases. In addition evidence otherwise relevant in a criminal prosecution is not rendered inadmissible because it may show some crime other than that charged. (*State v. Calvert,* 211 Kan. 174, Syl. 6, 505 P.2d 1110.) In *State v. Solem,* 220 Kan. 471, 475-476, 552 P.2d 951, we examined a set of facts almost identical to the facts in the present case where the same question was raised.

In *Solem* the defendant approached a narcotics agent and asked him if the agent would like to buy a drug. This incident did not form the basis for the offense charged in *Solem.* We held the evidence to be admissible independently of K.S.A. 60-455.

The evidence of the attempt to sell cocaine to R. C. Bonds was admissible in this case. The incident tended to show the act of the coconspirators in carrying out their overall plan. Half of the cocaine was to be sold to finance their alleged scheme and the other half delivered to the "fall guys" so defendant could make an arrest.

Other minor contentions have been raised on appeal and we have examined the same. They are without substantial merit.

The judgment is affirmed.